STATE OF CONNECTICUT *v.* DANIEL SITKIEWICZ
(AC 19281)

Schaller, Spear and Hennessy, Js.

Argued February 14—officially released July 3, 2001

*Martin J. Minnella*, with whom was *Tavis O. Tindall*, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *John J. Davenport*, assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Daniel Sitkiewicz, appeals from the judgment of conviction, rendered after a jury trial, of misconduct with a motor vehicle in violation of General Statutes § 53a-57.[1] The defendant claims that the court improperly denied (1) his motion for a continuance of sentencing pending posttrial discovery and (2) his motion for an evidentiary hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 2 a.m. on September 20, 1997, the defendant and the victim, Eric Robbins, were traveling home in the victim's car after an evening at Mister Happy's bar in Waterbury. As the vehicle approached

---

[1] General Statutes § 53a-57 provides: "(a) A person is guilty of misconduct with a motor vehicle when, with criminal negligence in the operation of a motor vehicle, he causes the death of another person.

"(b) Misconduct with a motor vehicle is a class D felony."

a curve on Thomaston Avenue at a relatively high rate of speed, it veered out of control, crashed into a fire hydrant, flipped end over end and rolled over several times in the parking lot of the state motor vehicles emissions testing building, sustaining heavy damage. In the course of the accident, the roof of the car dug into the ground and dislodged a significant amount of grass and dirt, which scattered throughout the car's interior. The victim was ejected from the vehicle and subsequently died from severe head injuries. The defendant was trapped inside the vehicle until the accident was discovered and reported approximately three hours later.

Officer Mark Ryan of the Waterbury police department was the first person to arrive at the scene. Although Ryan found the defendant pinned in the driver's seat, the defendant told Ryan that he had not been driving the vehicle. Thereafter, the defendant told emergency medical technician Robert Farina, who also found the defendant pinned in the driver's seat, that he had not been driving the vehicle.

To extricate the defendant, the fire department had to remove the roof of the vehicle using a rescue tool known as the "jaws of life." Even then, emergency personnel initially were unable to pull the defendant out of the vehicle because his thighs were trapped beneath the steering wheel, and his feet were tangled behind the clutch and the brake pedal. Eventually, the defendant was removed from the vehicle and taken to a hospital, where he was treated for his injuries.

The sole issue at trial was whether the defendant or the victim had been driving the vehicle. The defendant claimed that the victim was the driver. The state claimed that the defendant was the driver because he was found pinned in the driver's seat, the victim's injuries were consistent with injuries that a person on the passenger

side of the vehicle would have suffered, and the defendant's injuries were consistent with injuries that a driver would have suffered. A jury concluded that the defendant was the driver and found him guilty as charged. This appeal followed.

I

The defendant first claims that the court improperly denied his motion for a continuance of sentencing pending posttrial discovery. He claims that prior to the trial, state inspector James Bart Deeley lied to defense investigator Michael E. Shanok, an expert in the field of accident reconstruction, when he said that the state crime laboratory had inspected the vehicle and concluded that there was nothing to test. The defendant argues that this information led him to forgo requesting that alleged evidence of blood and hair on the windshield of the vehicle be preserved and tested prior to the trial, and he now seeks to have the judgment of conviction reversed and the case remanded to the trial court for posttrial discovery to test the alleged evidence. The defendant's claim has no merit.

The following additional facts are relevant to our resolution of the defendant's claim. Shortly before the trial commenced, Shanok met with Deeley to inspect the damaged vehicle. At trial, the defense claimed that forensic evidence inside the vehicle proved that the defendant was a passenger at the time of the accident, despite his being found in the driver's seat. Shanok testified that when examining the front windshield on the passenger side, he observed a series of fractures in the shape of a spider web from which he extracted two small pieces of broken glass. He testified that, using a magnification glass, he observed a dark maroon substance and what appeared to be several tiny strands of hair embedded in the glass. Defense counsel theorized that the defendant hit his head on the windshield,

thereby causing the crack and leaving behind the alleged evidence of blood and hair.

The state suggested a different theory. State investigator John R. McLay testified that the windshield was "caved in," thus indicating that an outside object had caused the damage. Farina, McLay and Deeley also testified that they did not see any evidence of blood on the windshield. McLay specifically testified that he searched for "hair samples throughout the windshield area on both sides; hair, blood, bone, tissue, anything that might help . . . figure out what happened," but found nothing. Even when Shanok testified on cross-examination that the splinter of glass he took from the windshield had some kind of substance on it, he could not identify the substance. Deeley also testified that to his knowledge, a forensic expert from the state laboratory in Meriden had inspected the vehicle but that he, Deeley, had never seen a report, although he believed that he had "seen something where it said that there was nothing for forensics that they could test."[2] Following Deeley's testimony, the prosecutor explained to defense counsel that he had contacted the state forensic laboratory following the accident, described what had happened to the vehicle and was told that the laboratory could not conduct any testing because of significant contamination by dirt and debris. As a result, no one from the state crime laboratory inspected or performed forensic tests on the vehicle, and no report ever was issued.

The day before sentencing, the defendant filed a motion for a continuance of sentencing pending post-trial discovery to collect evidence of and to perform testing on the alleged blood and hair embedded in the

---

[2] In his brief, the defendant states that Deeley's testimony was consistent with the pretrial representations he made to Shanok when they met to view the damaged vehicle.

windshield. The defendant had not requested forensic testing prior to filing the motion. The state opposed the motion, arguing that there was no evidence on the windshield, that nothing in the vehicle was even testable due to contamination and that the state had not made misrepresentations to the defendant concerning forensic testing. The state explained that Deeley's testimony that he had "seen something that said there was nothing for forensics to test" probably referred to the prosecutor's notes, which indicated that he had contacted the forensic laboratory and that the laboratory had concluded that there was nothing to test.

The court denied the defendant's motion, stating that "the defendant bears the burden to prove that the state had within its possession evidence favorable to the defendant that it failed to disclose to the defendant. . . . In this case, the court is satisfied that the defendant has not met [his] burden of showing that the state possessed exculpatory evidence that was favorable to the defendant, nor has the defendant even met his burden that such exculpatory evidence even existed. So for those reasons, the court is going to deny the defendant's posttrial motion for discovery . . . ." Thereafter, the court sentenced the defendant.

"The law governing the state's obligation to disclose exculpatory evidence to defendants in criminal cases is well established. The defendant has a right to the disclosure of exculpatory evidence under the due process clauses of both the United States constitution and the Connecticut constitution. *Brady* v. *Maryland*, 373 U.S. 83, 86, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *State* v. *Simms*, 201 Conn. 395, 405 & n.8, 518 A.2d 35 (1986). In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) that the evidence was favorable to the defense; and (3) that the evidence was material." (Internal quotation marks omitted.) *State*

v. *Floyd,* 253 Conn. 700, 736–37, 756 A.2d 799 (2000). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *State* v. *Olah,* 60 Conn. App. 350, 354–55, 759 A.2d 548 (2000). "[T]he trial court's decision regarding . . . a *Brady* violation will be overturned only upon a finding of clear abuse of discretion." (Internal quotation marks omitted.) *State* v. *St. Pierre,* 58 Conn. App. 284, 294, 752 A.2d 86, cert. denied, 254 Conn. 916, 759 A.2d 508 (2000).

In *State* v. *Shashaty,* 251 Conn. 768, 781–83, 742 A.2d 786 (1999), cert. denied, 529 U.S. 1094, 120 S. Ct. 1734, 146 L. Ed. 2d 653 (2000), the defendant claimed that the department of correction violated his state and federal constitutional rights to a fair trial because alleged evidence consisting of several envelopes and a letter vanished while in the custody of the state or the department. The state contested the existence of the alleged evidence, and the defendant's claim ultimately failed. The court concluded that there was no factual basis for the claim other than the defendant's own statement, which was insufficient to sustain his constitutional challenge. Id., 782–83.

Here, as in *Shashaty,* the court concluded that the defendant did not provide sufficient factual support for his claim that the alleged evidence existed. The court weighed the credibility of the witnesses and determined that Shanok's testimony could not overcome the collective testimony of Deeley, Farina and McLay that there was no evidence of blood and hair on the windshield of the car. On appeal, "we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand

observation of their conduct, demeanor and attitude. . . . The weight to be given to the evidence and to the credibility of witnesses is solely within the determination of the trier of fact." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Dixon*, 62 Conn. App. 507, 511, 772 A.2d 160 (2001).

We defer to the court's conclusion, which is amply supported by the evidence. The testimony of several witnesses suggested that the windshield was struck by an object outside the vehicle. Furthermore, Shanok was the only witness to testify that he observed what appeared to be hair on the windshield, and he could not say, when pressed to be specific on cross-examination, that the dark colored substance he also observed was blood, dirt or any other material. Moreover, Farina, McLay and Deeley testified that they did not see blood or other forensic evidence on the windshield despite attempting to find, as McLay explained, "anything that might help . . . figure out what happened." Finally, even if there had been forensic evidence inside the vehicle, investigators at the state crime laboratory concluded that it could not have been tested because of significant contamination by dirt and debris. Accordingly, making every reasonable presumption in favor of the court's ruling, we conclude that the court did not abuse its discretion in denying the defendant's motion for a continuance of sentencing. The court properly found that the defendant did not meet his burden of proving a *Brady* violation because he could not prove the existence of the potentially exculpatory evidence. See *State* v. *Connelly*, 46 Conn. App. 486, 512–13, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 908, 713 A.2d 829, cert. denied, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998).

The defendant argues that the facts here are analogous to the facts in *State* v. *Hammond*, 221 Conn. 264,

604 A.2d 793 (1992). We disagree. In *Hammond*, our Supreme Court determined that the trial court improperly denied the defendant's posttrial motion requesting permission to test rape kit material on the ground that there was reason to doubt the court's conclusion that such evidence would be cumulative. Both courts agreed, however, that there were samples in the rape kit, the samples were testable and the samples constituted potentially exculpatory evidence. Id., 294. By contrast, the trial court here denied the defendant's posttrial motion because he did not meet his burden of establishing that the state possessed potentially exculpatory evidence or that such evidence even existed. Accordingly, *Hammond* is inapposite.

## II

The defendant next claims that the court improperly denied his motion for a *Franks* hearing.[3] He claims that according to the coroner's report, the victim's injuries were primarily to the left side of his body, but that the arrest warrant stated that the victim's injuries were primarily to the right side of his body. The defendant thus claims that he made a substantial preliminary showing that false statements as to the location of the victim's injuries were included in, and material exculpa-

---

[3] "The standard currently applied in Connecticut to challenges directed to affidavits supporting warrant applications is the federal standard of *Franks* v. *Delaware*, supra, 438 U.S. 154. In *Franks* v. *Delaware*, supra, 171, the United States Supreme Court held that the truth of an affidavit supporting a search warrant may be challenged at an evidentiary hearing when a satisfactory preliminary showing of deliberate falsity or reckless disregard of the truth on the part of the affiant has been made. . . . If at such a hearing the allegation of falsity [by the affiants] is established by a preponderance of the evidence, and the remaining content of the affidavit is not independently sufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as when probable cause is lacking on the face of the affidavit. *Franks* v. *Delaware*, supra, 171–72." (Citations omitted; internal quotation marks omitted.) *State* v. *Glenn*, 251 Conn. 567, 570–71, 740 A.2d 856 (1999).

tory information was omitted from, the warrant affidavit in reckless disregard for the truth. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. On September 20, 1997, Malka B. Shah, an associate medical examiner in the office of the chief medical examiner for the state of Connecticut, performed an autopsy on the victim's body. On September 21, 1997, Shah signed a death certificate indicating that the victim was a passenger in a one-vehicle collision. On November 20, 1997, Shah issued a report of her findings and concluded on page four, after reviewing the police records, that the victim was driving the vehicle. The report described injuries to both sides of the victim's body, but noted that "[t]he external examination findings on the body of [the victim] do not contribute in determining whether he was the driver or passenger in the motor vehicle. Therefore, the death certificate has been amended to indicate that [the victim] was the driver in a one-vehicle collision." On January 5, 1998, Shah amended her November, 1997 report. The amendment stated: "I received a phone call from [the state's attorney] on December 19, 1997 indicating that their investigation had concluded that [the victim] was the passenger in a motor vehicle accident. This was followed by a letter and copy of their report of investigation. The review of the external examination and photographs does not contribute toward determining whether [the victim] was the driver or passenger. Therefore, the death certificate has been reamended to indicate that [the victim] was the passenger in a one-vehicle collision."

The defendant was arrested on March 5, 1998, pursuant to a warrant issued on March 2, 1998, for which Deeley was the affiant. Paragraph seven of the warrant alleged that "the injuries to Eric Robbins were *primarily to the right side of his body* which would indicate he was in the passenger seat of the vehicle. That these

injuries which were to his right side were noted in the external examination performed by Dr. Malka Shah at the Medical Examiner's Office in Farmington, Connecticut." (Emphasis added.)

The court conducted a pretrial conference on April 6, 1998.[4] There is no evidence in the record or file that the warrant was discussed at the conference. In a motion dated October 28, 1998, almost seven months later, the defendant requested an order granting him permission to file future motions,[5] but the record contains no evidence that the court ruled on that motion. On the morning of November 23, 1998, the day the trial was to commence, the defendant filed a motion for a hearing and for the voiding of the arrest warrant. In his motion, the defendant claimed that the warrant affidavit contained false statements that were necessary to the judge's subsequent finding of probable cause to arrest him. He claimed, specifically, that paragraph seven, in a deliberate and wrongful attempt to portray the victim as the passenger, contained untruthful statements concerning the location of the wounds, injuries and abrasions on the right side of the victim's body. The defendant alleged that, if the judge who issued the warrant had been aware that those statements were false, he would not have found probable cause to issue the warrant because the remaining content of the affidavit was insufficient to establish probable cause.

In his motion, the defendant also alleged that Deeley improperly omitted from the affidavit photographs of the damaged vehicle and material, exculpatory information concerning the location of the defendant's injuries and the ownership of the vehicle. He claims that this information would have established that he did not

---

[4] The court's computerized records confirm that such a conference was held.

[5] The motion is not date stamped, and there is no evidence in the record as to the date the motion was filed.

drive the vehicle on the night of the accident and, thus, there would have been no probable cause to issue the arrest warrant.

The court denied the motion, explaining that it "would have to hear some substantial evidence in support of your claims, and the court would also have to hear rebuttal witnesses . . . . The court is aware of the fact that there is a jury that has been selected, was selected more than three weeks ago. We are, today, at the point of commencing trial, and the jury has been assembled here this morning for that purpose. And we have also selected a jury based upon a time schedule that we have represented to them that this trial would take. If we were to have a hearing, that would seriously, in the court's opinion, jeopardize our ability to have this pool of jurors available to us. The court can't help but wonder why this motion was not filed in a more timely manner rather than on the morning of the day that we are to begin trial. Or it could have been filed even after we selected the jurors and prior to this morning.

"The court's not able to conclude that the statements . . . are false. Secondly, that the statements were made with a reckless disregard for the truth. And even if they were . . . false, that the statements would have rendered the affidavit . . . without sufficient probable cause for his arrest, or that the material that was allegedly excluded would have indeed been exculpatory. The court's not able to conclude that . . . without having what I believe would be a fairly prolonged hearing jeopardizing the ability of this trial to go forward. The court's going to deny your motion."

"Our standard of review for evidentiary matters allows the trial court great leeway . . . . The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done.

. . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Russo*, 62 Conn. App. 129, 133, 773 A.2d 965 (2001).

Practice Book § 41-5 provides in relevant part that "all pretrial motions or requests [in criminal matters] shall be made not later than ten days after the first pretrial conference in the court where the case will be tried, or, with permission of the judicial authority, at such later time as the judicial authority may fix. . . ." Practice Book § 41-4 provides in relevant part that "[f]ailure by a party, at or within the time provided by these rules, to raise defenses or objections or to make requests that must be made prior to trial shall constitute a waiver thereof, but a judicial authority, for good cause shown, may grant relief from such waiver . . . ."

Here, the defendant waived his right to a *Franks* hearing because his motion was untimely filed. The parties held their first pretrial conference on April 6, 1998. Almost seven months later, the defendant filed an untimely motion to reserve the right to make future motions. Because the court did not act on that motion, the defendant did not have permission to file a late motion at a subsequent point in time. Moreover, the defendant makes no claim that good cause existed for the motion's untimely filing. The court decided not to grant the defendant relief because the motion, in addition to being untimely, was filed on the first day of evidence, the jurors were assembled for the commencement of the evidence and a prolonged hearing would have jeopardized substantially the ability of the trial to go forward. Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's motion for a *Franks* hearing.

The judgment is affirmed.

In this opinion the other judges concurred.