STATE OF CONNECTICUT *v.* HERMAN VAN ECK
(AC 20595)

Mihalakos, Bishop and Dupont, Js.

Argued January 14—officially released April 30, 2002

*Herman Van Eck,* pro se, the appellant (defendant).

*Marjorie Allen Dauster,* senior assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *Barbara Hoffman,* senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Herman Van Eck, appearing pro se, appeals from the judgment of conviction, rendered after a trial to the court, of failure to register a commercial motor vehicle garaged or operated in Connecticut in violation of General Statutes § 14-

12a.[1] On appeal, the defendant's claims can be stated in the following manner: (1) the court improperly allowed the state to proceed pursuant to a charge that was different from that stated in the summons; (2) the state is preempted from requiring registration pursuant to § 14-12a by 49 U.S.C. § 14501 (Sup. I 1995); (3) the court improperly allowed witness testimony and documents admitted into evidence in violation of its orders; and (4) there was insufficient evidence to support a conviction for failure to register a motor vehicle garaged or operated in Connecticut.[2] We affirm the judgment of the trial court.

[1] General Statutes § 14-12a provides in relevant part: "(a) Any motor vehicle eligible for commercial registration as defined in section 14-1, unless exempted under the provisions of section 14-34, shall be registered in this state if: (1) It is most frequently garaged in this state, or, if not garaged at any fixed location, most frequently leaves from and returns to one or more points within this state in the normal course of operations. In the case of an owner-operator of the vehicle in question, registration hereunder shall be required only if the owner-operator has, within this state, one or more employees, agents or representatives engaged in activities directly related to the physical movement of the vehicle, or if the owner-operator is himself engaged in such activities . . . .

"(f) A person failing to register a motor vehicle in accordance with this section shall be fined not less than one hundred fifty dollars nor more than three hundred dollars."

[2] The defendant's statement of the issues is as follows:

"A. Did the Trial Court err in failing to consider the supremacy of Federal Statute?

"B. Did the Trial Court err in making a finding that the Defendant is the owner of the subject vehicle?

"C. Did the Trial Court err in finding that the bus was most frequently garaged in Connecticut?

"D. Did the Trial Court err in permitting the State to conduct a trial on an entirely new charge introduced mid-trial?

"E. Did the Trial Court err in permitting testimony of State's Witnesses not disclosed before trial in conformance with pre-trial Motion?

"F. Did the Trial Court err in permitting the State to introduce documents not disclosed in conformance with Court Order?

"G. Did the Trial Court err in concluding the subject bus was a 'commercial motor vehicle'?

"H. Did the Trial Court err in rendering a Judgment of Guilty of the Defendant herein?"

The court reasonably could have found the following facts. On May 19, 1999, the defendant was operating a bus en route between Boston and New York. Officer Richard Valentukonis stopped the bus on Interstate 95 in Westport. Valentukonis inspected the bus, and reviewed the registration and operating authority. The bus was registered in Delaware and had Delaware license plates. The United States Department of Transportation operating authority depicted on the side of the bus was 652814. Valentukonis issued a citation on May 19, 1999, to the defendant for failure to register a motor vehicle in Connecticut in violation of General Statutes § 14-12 (a). At trial, however, the state proceeded under § 14-12a. See part I.

On August 18, 1999, the court, *Robaina, J.*, conducted a hearing regarding the defendant's motion for disclosure and examination whereby the defendant requested numerous documents from the state. The court granted the motion in part, including the request for disclosure of witnesses and documents. On November 3, 1999,[3] the trial began before the court, *Miano, J.* The court found the defendant guilty of failure to register a commercial motor vehicle in violation of § 14-12a and imposed a $300 fine. This appeal followed.

The defendant filed a motion to remove the case to the United States District Court for the District of Connecticut and filed the requisite notice with this court on January 11, 2002, merely three days prior to oral argument in this court. On January 17, 2002, the state filed a motion for a summary remand with the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1446 to which the defendant responded on March 11, 2002. After finding that no federal question was implicated in this case, the District

[3] The transcript is dated November 11, 1999, but it is clear from the record and the testimony that the trial began on November 3, 1999.

Court concluded that it lacked subject matter jurisdiction.[4] Accordingly, the District Court granted the state's motion. This court, therefore, has jurisdiction to decide this matter. We now proceed to the merits of this appeal.

I

The defendant, appearing pro se, first claims that the court improperly permitted the state to conduct a trial on an entirely new charge introduced midtrial. Specifically, he argues that because the summons cited § 14-12 (a), rather than § 14-12a, he was not timely apprised of the charge against him. We disagree.

Before we reach the merits of the defendant's claim, it is important to review the procedural history of this case. In the original summons, the defendant was charged with failure to register a motor vehicle in violation of § 14-12 (a). On direct examination, the state's first witness, Valentukonis, testified regarding the registration of the vehicle and the information that he obtained during the stop. During cross-examination of Valentukonis, the defendant posited the following: "You appear to cite [§ 14-12 (a)], but when looking at the statute book, there's another statute, which is § 14-12a without parentheses. Are we to assume that you intended § 14-12 (a)? That's what the ticket said. That's not clear in my mind." After a brief discussion with the court regarding notice and the court's acquiescence that the defendant should have been charged with § 14-12a,[5] the defendant continued his cross-examination

---

[4] The order of remand states in relevant part: "The summons issued to Van Eck alleges a violation of Connecticut law. No federal question appears on the face of the complaint. A federal question only arises in the context of Van Eck's defense. Because plaintiff's cause of action does not arise out of federal law, this court does not have subject matter jurisdiction. Accordingly, Connecticut's motion for summary remand . . . is granted."

[5] The following colloquy took place:

"The Court: Let me ask you a question. Is it, you're claiming because of the parenthesis here, and apparently that was not accurate, is it your claim you were misdirected, and didn't have notice of the charge?

"[Defendant]: Well, I think I would say there are certain ambiguities.

of Valentukonis. Subsequently, the defendant began to question Valentukonis regarding the differences between § 14-12 (a) and § 14-12a. The court, however, interjected that the state was proceeding pursuant to § 14-12a and, therefore, any differences between the statutes were irrelevant.[6] The defendant then questioned Valentukonis regarding whether the vehicle was a commercial motor vehicle. The state's only other wit-

---

"The Court: With what? . . .

＊ ＊ ＊

"The Court: Are you telling me you're confused about what the charge was?

"[Defendant]: Yes.

"The Court: Okay. Did you raise that in your motion before Judge Robaina?

"[Defendant]: Well, no, because the ticket spoke for itself. We're now getting into a different issue here.

＊ ＊ ＊

"The Court: You're claiming the statute. You're claiming now the ticket was inaccurate?

"[Defendant]: No, I'm not saying that at all. I'm saying the ticket was issued as it stands.

"The Court: I understand that the gentleman, based on your questioning, indicates, I believe, that the parenthesis are inadvertent, and it should be 12a. That's the testimony you solicited.

"[Defendant]: Yes. I just want to establish that. That's all.

"The Court: I thought you were trying to establish you had no notice of what you're being charged with.

"[Defendant]: Well, I would reserve waiving that issue. I just want to bring it forth, what we're dealing with.

"The Court: Then you're not claiming that you didn't have notice of what you're being charged with? You're not making that claim? You want to bring to my attention there's a mistake, but you don't want to bring to my attention you didn't have notice?

"[Defendant]: I would reserve making a judgment on that."

[6] The following colloquy took place:

"The Court: Well, why are we getting to [General Statutes § 14-12] (a), when you already established that's not applicable?

"[Defendant]: Because [§ 14-12] (a) relates to the mechanism for obtaining Connecticut plates. That's the next area.

"The Court: You already established that the parenthesis is not applicable here. You already established that.

"[Defendant]: As respects the charge, not as in respect to any conduct of the individuals.

"The Court: *You're not charged with violation of [§ 14-12] (a).*

"[Defendant]: *Correct.*" (Emphasis added.)

ness, inspector Robert B. Woods of the department of motor vehicles, testified that the vehicle was garaged most frequently in Connecticut. During the direct examination of Woods, the court halted the proceedings and continued the case to a later date. See part III.

When the proceedings resumed, the defendant extensively cross-examined Woods regarding where the bus was garaged and whether he had conclusive proof that the bus found in the garage was the same vehicle stopped by Valentukonis. In addition, the defendant proffered photographs of the garage where Woods testified he found the vehicle garaged.[7] After the state rested, the defendant called his only witness, Francisco Rodriquez, a driver for New Britain Transportation, to testify regarding the department of motor vehicles' requirements for registration.

"Due process requires that a criminal defendant be given notice of the specific charge against him and an opportunity to defend against that charge. . . . Where a defendant is prejudiced by being charged with a substantially different crime after the commencement of trial, his due process rights are violated." (Citation omitted; internal quotation marks omitted.) *State* v. *James*, 247 Conn. 662, 681, 725 A.2d 316 (1999).

Section 14-12 (a) provides in relevant part that "[n]o motor vehicle shall be operated or towed on any highway, *except as otherwise expressly provided,* unless it is registered with the commissioner [of motor vehicles] . . . ." (Emphasis added.) Section § 14-12a (a) specifically governs the registration of commercial motor vehicles and requires the registration of a commercial

---

[7] It appears that the defendant proffered the photographs to buttress his argument that the vehicle was parked at a temporary layover yard when Woods found it, which would negate the "most frequently garaged" element of General Statutes § 14-12a (a) (1). The photographs were admitted as full exhibits.

vehicle if it is most frequently garaged in this state or if it most frequently travels in and out of the state in the normal course of its operations. "Where there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one case or subject within the scope of a general provision, then the particular provision must prevail . . . and be treated as an exception to the general provision." *Budkofsky* v. *Commissioner of Motor Vehicles*, 177 Conn. 588, 592, 419 A.2d 333 (1979). "[Section] 14-12a is the controlling provision relating to the registration of commercial motor vehicles, notwithstanding the general registration requirement set forth in § 14-12 (a)." Id., 593. Because § 14-12 (a) applies to the registration of motor vehicles generally and § 14-12a applies to the registration of commercial motor vehicles specifically, the defendant was not tried for an offense substantially different from the one with which he was originally charged.

Furthermore, the court may permit the prosecuting authority to amend the information and to charge a defendant with a different offense for good cause shown, even after trial has begun.[8] Practice Book § 36-18.[9] "Practice Book § 624 [now § 36-18] is primarily a notice provision. Its purpose is to ensure that the defendant has adequate notice of the charges against which he must defend. . . . It is the defendant's burden to provide a specific showing of prejudice resulting from

[8] Although the prosecutor never explicitly amended the summons, it is clear from the tenor of the defendant's cross-examination of Valentukonis and colloquy with the court that the defendant knew that the state was proceeding pursuant to General Statutes § 14-12a. Under those unusual circumstances, we treat the summons as having been amended.

[9] Practice Book § 36-18 provides in relevant part: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. . . ."

the state's delay in providing notice of the charge against which [he] must defend." (Citation omitted; internal quotation marks omitted.) *State* v. *Ryan*, 53 Conn. App. 606, 620, 733 A.2d 273 (1999).

In the present case, the state neglected to amend the information formally after the defendant had elicited the discrepancy between the ticket citation and the arresting officer's testimony as to the charge. Both parties proceeded on the basis of § 14-12a, and the court rendered judgment on that basis. The purpose of Practice Book § 36-18 is to put the defendant on notice. See *State* v. *Ryan*, supra, 53 Conn. App. 620. It is clear from our review of the record, transcripts and exhibits that the defendant had actual notice of the offense with which he was charged.[10] Although we do not condone the state's failure to file a substitute information, to require it to do so in this case would be to exalt form over substance. See, e.g., *Tedesco* v. *Stamford*, 215 Conn. 450, 462–63, 576 A.2d 1273 (1990) (remanding for further proceedings where complaint varied from proof at trial and both parties fully litigated case on merits), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd on other grounds, 222 Conn. 233, 610 A.2d 574 (1992); *State* v. *Beliveau*, 52 Conn. App. 475, 480, 727 A.2d 737 (where court fails to comply with Practice Book § 64-1, but factual findings, legal conclusions

[10] In addition to the defendant's actual knowledge of the statute with which he was charged, he also prepared a legal argument whereby he claimed that he could not have violated General Statutes § 14-12a. During cross-examination of Valentukonis, the defendant attempted to argue that *Budkof-sky* v. *Commissioner of Motor Vehicles*, supra, 177 Conn. 588, is analogous and controls this case. He argued that because the owner of an unregistered Mack truck in *Budkofsky*, having been charged with violating General Statutes § 14-12 (a), was found not to be in violation of § 14-12a, the defendant in this case also was not in violation of § 14-12a. Regardless of whether that argument was appropriate during the examination of a witness, it is enlightening. It further supports our conclusion that the defendant was fully aware of the charges against him and, further, that he was prepared to defend against them.

found in unsigned transcript, defect technical, claims reviewable), cert. denied, 249 Conn. 920, 733 A.2d 235 (1999).

If the court allows an amendment to the information to conform to the evidence, the decision of the court allowing the state to amend the information will be reversed only on a showing of an abuse of discretion. See *State* v. *Ryan*, supra, 53 Conn. App. 620. "The trial court's discretion pursuant to Practice Book § 624 [now § 36-18] is limited only by the requirement that no additional or different offense may be charged in and no substantive rights of the defendant may be prejudiced by an amended information." (Internal quotation marks omitted.) *State* v. *Ryan*, supra, 620.

The defendant now argues that because the court allowed the state to proceed under § 14-12a, rather than § 14-12 (a), he was prejudiced. Specifically, the defendant claims that because he was not apprised of the charges against him, he was forced to "attempt to mount a defense 'on the fly.'" "In determining whether the defendant's rights were prejudiced, this court considers the totality of the circumstances in deciding whether the defendant was surprised by the changes and whether the defense was hampered. . . . A bare assertion of prejudice is not sufficient to support a claim of prejudice. . . . The defendant must provide a specific showing of prejudice in order to establish that he was denied the right of due process of law . . . ." (Citations omitted; internal quotation marks omitted.) Id., 621.

The defendant has provided this court with nothing more than a bare assertion that he was prejudiced. Although he maintained throughout trial that he had no knowledge that the state would proceed under § 14-12a, it was the defendant who brought the mistake to the court's attention during his cross-examination of Valentukonis. The defendant questioned the very first

witness regarding whether the vehicle was a "commercial motor vehicle," a term that does not appear in § 14-12 (a). In addition, some time prior to December 6, 1999, when trial resumed after a continuance that had been granted, the defendant obtained photographs of the garage that was the subject of Woods' testimony and used the photographs to cross-examine him.

Considering the totality of the circumstances involved, we cannot conclude that the defendant was surprised or that the defense was hampered. The defendant has failed to meet his burden to prove that he was prejudiced by the amendment, and, therefore, the court did not abuse its discretion.

II

The defendant next argues that the state's enforcement of § 14-12a is an enforcement of a regulation specifically prohibited by federal law. Although it is difficult to ascertain exactly the argument that the defendant has presented to us,[11] in essence, he claims that the state is preempted from regulating charter bus services by 49 U.S.C. § 14501 (Sup. I 1995).[12] We decline,

[11] It is not clear whether the defendant is arguing that the state is preempted from enforcing General Statutes §§ 14-12 (a) or 14-12a. The summons and court docket sheets refer to § 14-12 (a). The defendant claims that he was charged with having violated § 14-12 (a), but was tried as though the charge was that of having violated § 14-12a. See part I.

[12] Section 14501 of title 49 of the United States Code, titled "Federal authority over intrastate transportation," provides in relevant part: "(a) Motor Carriers of Passengers—

"(1) Limitation On State Law. No State or political subdivision thereof and no interstate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to . . .

"(C) the authority to provide intrastate or interstate charter bus transportation. . . .

"(2) Matters Not Covered.—Paragraph (1) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle, or the authority of a State to regulate carriers with regard to minimum amounts of financial responsibility relating to insur-

however, to review his claim.[13]

"[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Citation omitted; internal quotation marks omitted.) *Macricostas* v. *Kovacs*, 67 Conn. App. 130, 133, 787 A.2d 64 (2001).

The defendant has not presented this court with any legal authority or analysis beyond an assertion that § 14-12 (a) or § 14-12a is preempted by 49 U.S.C. § 14501 (Sup. I 1995). "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Citation omitted; internal quotation marks omitted.) *State* v. *Jones*, 67 Conn. App. 25, 27 n.2, 787 A.2d 43 (2001).

ance requirements and self-insurance authorization." 49 U.S.C. § 14501 (Sup. I 1995).

[13] Even if we were to review his claim, the defendant's argument would fail. Section 14501 (a) (1) does not apply in this case because General Statutes § 14-12a falls within the matters not covered and expressly left to the states. See 49 U.S.C. § 14501 (a) (2) (Sup. I 1995). Registration of motor vehicles falls within the safety regulatory power of the state in addition to the authority to regulate insurance requirements. "The legislature enacted the statutes governing the operation of motor vehicles . . . for the protection of the lives and property of the citizens of this state." (Internal quotation marks omitted.) *State* v. *Swain*, 245 Conn. 442, 456, 718 A.2d 1 (1998) (concluding General Statutes § 14-111, governing suspension or revocation of operator's license, valid exercise of state police power); see also *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles*, 167 Conn. 304, 307–308, 355 A.2d 247 (1974) (holding General Statutes § 14-66 (a), requiring licensing to engage in operating wrecker for purpose of towing, valid exercise of police power).

## III

The defendant next claims that the court improperly permitted witnesses to testify and admitted into evidence documents, neither of which were disclosed to him prior to trial. Specifically, he argues that because the state did not comply with the court's disclosure order, the court should have prohibited the witnesses from testifying and refused to admit documents into evidence. We do not agree.

"Practice Book § 40-5[14] gives broad discretion to the trial judge to fashion an appropriate remedy for noncompliance with discovery. . . . Generally, [t]he primary purpose of a sanction for violation of a discovery order is to ensure that the defendant's rights are protected, not to exact punishment on the state for its allegedly improper conduct. As we have indicated, the formulation of an appropriate sanction is a matter within the sound discretion of the trial court. . . . In determining what sanction is appropriate for failure to comply with court ordered discovery, the trial court should consider the reason why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a

[14] Practice Book § 40-5 provides: "If a party fails to comply with disclosure as required under these rules, the opposing party may move the judicial authority for an appropriate order. The judicial authority hearing such a motion may enter such orders and time limitations as it deems appropriate, including, without limitation, one or more of the following:

"(1) Requiring the noncomplying party to comply;

"(2) Granting the moving party additional time or a continuance;

"(3) Relieving the moving party from making a disclosure required by these rules;

"(4) Prohibiting the noncomplying party from introducing specified evidence;

"(5) Declaring a mistrial;

"(6) Dismissing the charges;

"(7) Imposing appropriate sanctions on the counsel or party, or both, responsible for the noncompliance; or

"(8) Entering such other order as it deems proper."

continuance, and any other relevant circumstances. . . . Suppression of relevant, material and otherwise admissible evidence is a severe sanction which should not be invoked lightly." (Citations omitted; internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 186, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

The following additional procedural history is relevant to our resolution of these issues. On August 18, 1999, the court, *Robaina, J.*, heard argument regarding the defendant's motion for disclosure and examination. The defendant requested that the state disclose, inter alia, the "names and addresses of all witnesses whom the prosecuting authority intends to call at trial," and "[a]ny and all . . . papers, photographs and/or documents . . . intended for use by the prosecuting authority as evidence at the Defendant's trial or which are material to preparation of the defense." The court granted the motion as to the list of witnesses, but denied the motion as to the latter request. At no time did the state comply with the court's order.[15]

On November 3, 1999, the court, *Miano, J.*, began to hear evidence regarding this matter. When the court asked the defendant if he was ready to proceed, the defendant responded, "Yes." The court first heard the defendant's motion to suppress, but the defendant could not specify what information he wanted to have suppressed. Thereafter, the court informed the defendant that the burden was on him to object to the evidence presented and to state the grounds on which he was objecting. When the state called its first witness,

[15] On November 3, 1999, the prosecutor stated: "I believe at the time the state indicated we were going to call the arresting officer [Valentukonis] and inspector Woods, and that's it. That was part of the information that was in the file that was available to the defendant." A review of the August 18, 1999 transcript does not reveal such a statement.

Valentukonis, the defendant objected.[16] The court overruled the objection and allowed the testimony.

Thereafter, the state called Woods to testify. The court overruled the defendant's objection to that witness as well and allowed the testimony. During the state's direct examination of Woods, the state proffered the defendant's application for a United States Department of Transportation number (application). The court sustained the defendant's objection to the document and ordered a continuance for two weeks.[17] On Decem-

[16] The following colloquy took place:

"[Defendant]: Judge, I will raise an objection.

"The Court: Have a seat, sir. To what?

"[Defendant]: Objection to this witness being brought in to testify.

"The Court: Sir, what are the grounds of you objecting to this witness?

"[Defendant]: Motion disclosure examination was granted by Judge Robaina. I refer the court to page eight, paragraph seven.

"The Court: Okay. . . . What is your claim?

"[Defendant]: Names and addresses of all witnesses prosecuting authority intends to call at trial disclosed.

"The Court: Were they disclosed?

"[Defendant]: No, Judge.

\* \* \*

"The Court: You didn't say no witnesses were disclosed.

"[Defendant]: Well, I don't know what the nature of the evidence is going to be.

"The Court: Well, neither do I. You didn't voice a claim that the state did not comply with the motions. I'm assigned here for a purpose to try a case. Now, both sides said they were ready. Because of maybe their action, you're not ready. Is that fair to say?

"[Defendant]: No, I don't think so, Judge. The reason I would say that the defendant has no way of determining how or with what mechanism the state proposes to advance its cause.

"The Court: . . . In the event [the motion] is not complied with, then its up to you, the requesting party, to say noncompliance.

"[Defendant]: . . . The noncompliance only occurs when the state moves forward.

"The Court: If the court makes the order, the state is required to comply."

[17] The following colloquy took place:

"[Defendant]: I object on the grounds that it wasn't disclosed. We're back to the disclosure requirement.

"The Court: What is that item? What is it?

"[Witness]: Application for United States Department of Transportation.

\* \* \*

ber 6, 1999, after an additional continuance, the defendant's trial resumed. Again, the state proffered the application through Woods' testimony and the defendant objected.

Previously, during the hiatus on November 9, 1999, the defendant attempted to obtain the clerk's file, but was denied access. On November 10, 1999, the defendant filed a motion for compliance, but the court never received the motion. During the trial, on December 6, 1999, attorney Michael Dannehy of the state's attorney's

"[Prosecutor]: The problem here is there are a number of things Judge Robaina did require us to bring forth. The state has had that available as part of the file, and the defendant never came to look at it.

"The Court: Was this item there?

"[Prosecutor]: Yes, Your Honor.

\* \* \*

"[Defendant]: My objection is sort of a philosophic one. I'm getting sandbagged by these documents getting dumped. I think the state's attorney could have done me the good grace to, you know, to disclose it to me in a reasonable fashion.

"The Court: Well, you know full well they weren't doing that. . . . They didn't have to answer everything in writing. Now, okay. Nobody wants it sandbagged. You said the magic word. We're stopping right now. What date do you want?

\* \* \*

"The Court: Okay. I'm going to continue this matter . . . . I'm starting a trial. . . . I will continue this until Tuesday, November 16, which is two weeks from yesterday, at 2 p.m.

\* \* \*

"The Court: That's going in the clerk's file. That will be available to you now. No one will spoon-feed you. That's available to you. Now, I suggest you come in next week at your leisure at reasonable business hours and avail yourself of that. As far as you know, everything is in the file?

"[Prosecutor]: Yes.

"The Court: All right. And that's not your file, that's the clerk's file?

"[Prosecutor]: Yes, the clerk's file.

\* \* \*

"The Court: . . . If you are under the impression, Mr. Van Eck . . . that the state does not comply in good faith with the court order, Judge Robaina's order, you are to advise me in writing, even handwritten is fine, advise me in writing by one week from today, November 10th, in writing. It doesn't have to be typed. Is that understood, sir?

"[Defendant]: Yes."

office testified that the defendant had come to the state's attorney's office to retrieve documents from the file, but he was unaware that the defendant was entitled to review the entire file. Dannehy also testified that he offered to forward the documents via facsimile transmission, but the defendant never provided a facsimile telephone number. The defendant declined to testify regarding the matter. The court then took a thirty minute recess to enable the defendant to review the file.

The defendant claims that the court should have barred the testimony and refused to admit into evidence the documents because the state was in direct violation of a previous court order.[18] The court did, however, sanction the state for noncompliance with the disclosure order. First, the court continued the matter for almost one month for the defendant to obtain the records, which were in the clerk's file. The court also recessed when it was informed that the defendant had not yet been given the documentation.

Although we recognize that the use of an open file policy is not a substitute for disclosure; *State* v. *Wilcox*, 254 Conn. 441, 453 n.19, 758 A.2d 824 (2000); the defendant was not prejudiced by the nondisclosure. See *State* v. *Respass*, supra, 256 Conn. 186. The defendant was fully prepared to cross-examine both of the state's witnesses and offered his own witness to support his defense. See part I.

---

[18] The defendant bases his argument on *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). That argument is misplaced. "In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) *that the evidence was favorable to the defense*; and (3) that the evidence was material." (Emphasis added; internal quotation marks omitted.) *State* v. *Sitkiewicz*, 64 Conn. App. 108, 113, 779 A.2d 782, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001). None of the documents to which the defendant objected was exculpatory in nature, and, therefore, *Brady* is inapposite to the case before us.

Although the state's failure to disclose the previously mentioned information is inexcusable, we conclude that the court did not abuse its discretion by electing to continue the matter and, later, by ordering a recess rather than by precluding the testimony and the evidence.

## IV

The defendant's final claim is that there was insufficient evidence to support his conviction for failure to register a motor vehicle in Connecticut. Specifically, he argues that the state did not prove, beyond a reasonable doubt, that (1) the subject vehicle was most frequently garaged in Connecticut, (2) the defendant was the owner-operator of the vehicle and (3) the subject vehicle was a "commercial motor vehicle." We disagree.

Each of the defendant's challenges to the sufficiency of the evidence is founded on the court's factual findings. Therefore, the proper standard of review is whether, on the basis of the evidence, the court's finding that the defendant was the owner-operator of a commercial motor vehicle that was garaged most frequently in Connecticut was clearly erroneous. See *State* v. *Trotman,* 68 Conn. App. 437, 441, 791 A.2d 700 (2002). "[A] court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficiency when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id. Furthermore, when a defendant is tried to the court, "the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflict-

ing evidence is for the trier to determine." (Internal quotation marks omitted.) Id.

The defendant was convicted of failure to register a motor vehicle in violation of § 14-12a. To prove its case, the state had to first prove beyond a reasonable doubt that the vehicle was eligible for commercial registration as defined in General Statutes § 14-1.[19] In addition, the state had to prove that the vehicle either is most frequently garaged in Connecticut or most frequently leaves from and returns to one or more points within this state in the normal course of operations. In the case of an "owner-operator," registration is required only if the "owner-operator" is engaged in activities directly related to physical movement of the vehicle. Therefore, the state must also prove, beyond a reasonable doubt, that the defendant was the "owner-operator" of the vehicle.

A

The defendant first challenges the court's finding that the vehicle was garaged most frequently in Connecticut. He claims that the "state attempted to advance this claim based upon two elements: (1) a bus of the company had been seen irregularly at Tweed-New Haven Airport, and (2) a bus of the company had been seen precisely once located at a local bus yard." We disagree.

The following additional facts and procedural history are relevant to our disposition of the defendant's claim. Woods testified that while he was investigating various complaints that the vehicle was operating in Connecticut, but not registered in Connecticut, he located the vehicle parked at a garage in East Haven on May 6, 1999. In addition, Woods testified that he interviewed various witnesses at Tweed-New Haven Airport who

---

[19] "Commercial registration" is the type of registration required for any motor vehicle designed or used to transport persons in connection with any business enterprise. See General Statutes § 14-1 (a) (12).

had seen the bus at the airport in the past few years. A Flying Dutchman Motorcoaches brochure (brochure) representing that the company is "based at Tweed-New Haven Field" and serves airlines in Connecticut also was admitted into evidence. The brochure directs inquiries to 300 Main Street, P.O. Box 120282, East Haven, Connecticut, and provides a Connecticut telephone number. In addition, a letter written on Flying Dutchman Motorcoaches' letterhead and bearing the same address as the brochure, from Jan Van Eck[20] to the United States Department of Transportation was admitted into evidence.

After finding the state's witnesses to be credible, the court concluded "from the facts proven and the reasonable and logical inferences to be drawn from those facts that the state has proven that the subject motor vehicle was 'most frequently' housed/garaged in the state of Connecticut for the last several years up to and including the day of the stop of the vehicle on May 19, 1999." On the basis of the foregoing, we cannot conclude that the court's finding was clearly erroneous.

B

The defendant next argues that the court improperly found that he was the owner-operator of the bus. The defendant argues that because the state did not offer a document of ownership or the registration of the vehicle, there was no evidence that he was the owner. Furthermore, he argues that in a separate proceeding, the court made a conclusive finding that he was not the owner of the vehicle.[21] We are not persuaded.

[20] See footnote 21.

[21] The defendant argues that the court's finding that he was the owner-operator of the vehicle was in direct conflict with a previous finding in *Automotive Management Group, Ltd.* v. *Helldica, Inc.*, judicial district of New Haven, Docket No. CV990425122S (January 2, 2001). That case is, however, irrelevant because the defendant was not a party in it.

The following additional facts and procedural history are relevant to our disposition of the defendant's claims. Valentukonis testified that United States Department of Transportation number 652814 was depicted on the side of the vehicle. On the basis of that number, Valentukonis testified that the main office of operation registered with the federal government was Jan Van Eck, doing business as "Flying Dutchman Motorcoaches," 300 Main Street, East Haven, Connecticut. In addition, a "Motor Carrier Identification Report" (report) completed by Jan Van Eck and containing the same information was admitted into evidence. The report was sent to the Federal Highway Administration office in Glastonbury via facsimile transmission to a Connecticut telephone facsimile number. The vehicle was, however, registered in Delaware and had Delaware license plates.

The court found that "the defendant, based on all the evidence, including but not limited to state's exhibit one,[22] had the legal authority to register the vehicle. Accordingly, the state has proven that the defendant is an 'owner' under the statute." The defendant argues that the state did not prove that he was the owner because no documentation specifically proving ownership, i.e., certificate of title or registration, was offered into evidence. An owner is "any person holding title to a motor vehicle, or *having the legal right to register the same*, including purchasers under conditional bills of sale . . . ." (Emphasis added.) General Statutes § 14-1 (a) (56).

The defendant has offered no law or analysis supporting his claim that the court improperly made the factual finding, from the evidence presented, that he was a

---

[22] State's exhibit one is the report completed and signed by Jan Van Eck. It appears that the court treated Herman Van Eck as Jan Van Eck throughout the proceedings. The defendant has presented nothing to this court, in his brief or during oral argument, disputing that identification.

person "having the legal right to register" the vehicle. Again, we are mindful that the defendant has exercised his right to represent himself in this matter, and we are mindful of this court's policy to give latitude in such cases. The right to self-representation, however, does not give a pro se litigant free rein to ignore our rules of practice. See *Macricostas* v. *Kovacs*, supra, 67 Conn. App. 133.

C

The defendant next argues that the court improperly found that the vehicle was a "commercial motor vehicle." Specifically, he argues that because there was no credible evidence before the court that the vehicle weighed more than 26,001 pounds, the state did not prove both that the vehicle weighed more than 26,001 pounds and was designed to transport sixteen or more passengers within the meaning of § 14-1 (a) (11).[23] We are not persuaded.

Although the court did analyze whether the vehicle was a "commercial motor vehicle,"[24] the proper inquiry was whether the vehicle was "eligible for commercial registration as defined in section 14-1."[25] "[W]e are

[23] In furtherance of his claim, the defendant argues that the court improperly found that only one of the criteria for which General Statutes § 14-1 (a) (11) provides must be proven by the state because there is "no disjunctive 'or' [in the statute]. There is merely a colon." That claim is without merit because § 14-1 (a) (11) clearly contains the disjunctive "or" between subsection (B) and subsection (C). Therefore, the state had the burden to prove either one or the other. The defendant does not dispute the court's finding that the vehicle was designed to transport sixteen or more passengers.

[24] A "commercial motor vehicle" is "a vehicle designed or used to transport passengers or property . . . which (A) has a gross vehicle weight rating of twenty-six thousand and one pounds or more; (B) is designed to transport sixteen or more passengers, including the driver . . . ." General Statutes § 14-1 (a) (11).

[25] Pursuant to No. 90-263, § 2 (a), of the 1990 Public Acts, the clause, "[a]ny commercial motor vehicle other than a private passenger vehicle or any motor vehicle," was replaced with "[a]ny motor vehicle eligible for commercial registration as defined in section 14-1 . . . unless exempted"

mindful [however] of our authority to affirm a judgment of a trial court on a dispositive alternate ground for which there is support in the trial court record." (Internal quotation marks omitted.) *State* v. *Pierce*, 67 Conn. App. 634, 639, 789 A.2d 496 (2002); see also *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 794, 749 A.2d 1144 (2000).

Pursuant to § 14-1 (a) (12), a vehicle is eligible for commercial registration if it is designed or used to transport persons in connection with any business enterprise. The court made the factual finding that "the subject vehicle was equipped and designed to transport sixteen or more passengers, including the driver." Therefore, there is support in the record that the vehicle was designed and equipped to transport persons. Furthermore, it was undisputed that the vehicle was used to transport passengers for compensation.

We conclude that there was sufficient evidence in the record to support the court's conclusion that the subject vehicle was equipped and designed to transport persons. In addition, it was undisputed that the vehicle was used in connection with a business enterprise. Accordingly, we conclude that the state proved, beyond a reasonable doubt, that the vehicle was eligible for commercial registration as defined in § 14-1 and that it was not registered in this state.

The judgment is affirmed.

In this opinion the other judges concurred.

in General Statutes § 14-12a. The state, therefore, no longer must prove the vehicle was a commercial motor vehicle to sustain a conviction under § 14-12a.