[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action instituted by the plaintiff against the defendant estate seeking payment of a debt of $44,235.28 arising from hospital and medical services rendered to the decedent prior to her death. In addition to the reasonable value of medical services, the plaintiff is seeking statutory interest (calculated by the plaintiff to be $10,483.16 as of May 10, 2002), attorney's fees, and the cost of suit.
The complaint bares a return date of November 14, 2000. The Administrator filed a pro se appearance on behalf of the estate on November 15, 2000, but he never filed an answer or any other responsive pleading. On August 22, 2001, the plaintiff moved to default the defendant for failure to plead. The motion was granted by the Clerk on September 10, 2001. Plaintiff's attorney claimed the matter for a hearing in damages on September 26, 2001, and again on October 5, 2001. On May 31, 2002, the plaintiff's attorney appeared in court for the hearing in damages. On that date, the defendant's Administrator, Martin Johnson, also appeared.
The evidence at the hearing established the following: On January 31, 2000, Martin Johnson, the decedent's brother, was appointed Administrator of her estate (Transcript, May 31, 2002, p. 1). The decedent owned two properties at the time of her death. (Transcript, pp. 1, 2). The Administrator claimed that although his sister had tenants, she had to pay for the properties out of her pocket because the money from the houses was not paying the bills. (Transcript, p. 13).
Sometime after his appointment and prior to November, 2000, the Administrator filed an application for Free Care with Bridgeport Hospital on behalf of the decedent (Transcript, pp. 11, 12; Plaintiff's Exhibit 3). The application was reviewed by Ron Gibbs, Team Coordinator of Patient Account Correspondence at Bridgeport Hospital (Transcript, pp. 23, 24; Plaintiff's Exhibit 5). Mr. Gibbs testified that he provided Mr. Johnson with the application and reviewed the application submitted CT Page 12217 (Transcript, p. 24). Mr. Gibbs, after reviewing the application, determined that Free Care should be granted for the decedent because "[t]he only income she received was the money from the state to raise her three foster children, which was $34,056 yearly. Her annual income was well below the income guidelines for a family of four. The patient does not have any other insurance or income. The patient should be granted Free Care Assistance." (Plaintiff's Exhibit 5). This determination date was November 20, 2000. On November 22, 2000, seven days after the Administrator filed his pro se appearance for the estate, Bernard W. Lane, Jr., Corporate Director of Patient Accounts sent a letter to the decedent indicating that the free care application had been received and reviewed. The letter states: "the guidelines for granting free care have been met; therefore, the Hospital will adjust the balance of all open accounts you have to zero. The total amount of Free Care given is $44,235.28." (Defendant's Exhibit A).
Gibbs testified that, subsequent to the granting of the Free Care application, he was told by the Hospital's attorney that the decedent had additional rental income (Transcript, p. 28). The Hospital did not know how much rental income was received by the decedent because that was left in the hands of the attorney (Transcript, pp. 28, 29). Gibbs did not know whether any additional income would have put the decedent over the poverty income guidelines, which were $42,625 for a family of four (Transcript, p. 29). The plaintiff Hospital denied the application based on the attorney's determination that there was additional rental income (Transcript, p. 30). The Hospital did not send the Administrator a letter concerning their decision to rescind the approval of the free care application. Gibbs said that that was something the attorney would do. He did not know whether a letter was sent (Transcript, p. 32). The attorney was the same attorney who had signed the complaint in October, 2000, who had filed the motion for default for failure to plead in August, 2001, and who had appeared at the hearing in damages on May 31, 2002 (Transcript, p. 32). There is no evidence that the Administrator of the defendant estate was ever advised that the Free Care application approval had been rescinded.
 Discussion
Ordinarily, the court would not consider any defenses with respect to liability after default entered. Pursuant to Practice Book § 17-34, a defaulted defendant who files a timely notice of defenses can contradict the allegations of the complaint and prove matters of defense in addition to contesting the amount of damages. Whalen v. Ives, 37 Conn. App. 7,20, 654 A.2d 798, cert. denied, 233 Conn. 905, 657 A.2d 645 (1995). "In order to obtain this extraordinary relief, the defendant must act within CT Page 12218 ten days of notice of a default in all actions where there may be a hearing in damages . . . Practice Book § 17-35. A party who allows the ten day period from the notice of a default without filing a notice of defenses does so at his peril." Whalen v. Ives, supra. In addition, "[t]he law of the case . . . expressed the practice of judges generally to refuse to reopen what has been decided and it is not a limitation on their power. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided . . ." Lewis v. Connecticut Gaming PolicyBoard, 224 Conn. 693, 697, 620 A.2d 780 (1993) citing Breen v. Phelps,186 Conn. 86, 99, 439 A.2d 1066 (1982). On the other hand, "[t]he law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. (Internal citations omitted.) Breen v. Phelps, supra; Statev. Hoffler, 174 Conn. 452, 462-63, 389 A.2d 1257 (1978).
"There is a clear distinction between a default, sometimes loosely referred to as a judgment of default, and a judgment upon default. A default is not a judgment. It is an interlocutory order of the court, the effect of which is to preclude the defendant from making any further defense in the case so far as liability is concerned. A judgment upon default, on the other hand, is the final judgment in the case which is entered after the default and after a hearing in damages." Vincent Turciov. New Haven Police Department, et al, Superior Court, judicial district of New Haven, Docket No. CV95-0376292, (May 4, 1998). Section 17-42 provides that: "A motion to set aside a default where no judgment has rendered may be granted by the judicial for good cause shown upon such terms as it may impose."
The defendant did not file a motion to set aside the default. Rather, he appeared at the hearing in damages stating in so many words that he had a defense to the claims of the plaintiff, i.e. that the decedent had been granted free care. For these purposes, the court will treat his statement in court as a motion to set aside the default. "Good cause is defined as a substantial reason amounting in law to a legal excuse for failing to perform an act required by law and legally sufficient ground or reason." Higgins v. Karp, No. S.Ct. 15435 (February 10, 1997)1997 Connecticut Superior 1044. In this case, the court must determine whether the circumstances are such that the court is satisfied that there is good cause to reopen the default. In exercising its discretion, "the trial CT Page 12219 court may consider . . . the presence of `mistake, accident, inadvertence, misfortune or other reasonable cause." Higgins v. Karp,243 Conn. 495, 508, 706 A.2d 1 (1998); Munch v. Willametz, 156 Conn. 6,10, 238 A.2d 424 (1998). Other factors to be considered are "[t]he seriousness of the default, its duration, the reasons for it and the degree of contumacy involved." Higgins v. Karp, supra; E. Stephenson, Connecticut Civil Procedure (3rd Edition 1997) Section 96(f), p. 288. In short, "the totality of the circumstances, including whether the delay has caused prejudice to the non-defaulting party" should be considered. See Higgins v. Karp, supra.
It is clear that the Administrator of the defendant estate failed to comply with the Practice Book rules. He was served with papers, and he filed an appearance. Thereafter, he filed no answer. Even after he received notice of a default, he filed no motion to set aside the default. He appears to have completely ignored the lawsuit until he received notice from the court that there would be a hearing in damages. The Appellate Court has stated that "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Citations omitted; Internal quotation marks omitted.) State v. Van Eck, 69 Conn. App. 482, 493, 795 A.2d 582
(2002); Mitchell v. Silverstein, 67 Conn. App. 58, 60, 787 A.2d 20
(2001); Macricostas v. Kovacs, 67 Conn. App. 130, 133, 787 A.2d 64
(2001). "Additionally, we emphasize that our liberal policy toward pro se parties is severely curtailed in cases where it interferes with the rights of other parties." Rosato v. Rosato, 53 Conn. App. 387, 390, 731 A.2d 323
(1999).
It would appear, however, that the failure of the Administrator to comply with the rules of practice may have resulted from the confusion caused by the plaintiff. The facts demonstrate that the Hospital's attorney sent demand letters for payment and filed a claim against the estate on behalf of the plaintiff. Subsequently, the Administrator applied to the Hospital for Free Care. Either before or after the application, the Hospital's attorney filed suit against the estate. The Administrator then filed an appearance in the case. However, the Hospital then sent a letter indicating that the decedent was to receive Free Care and there was actually nothing owing. The plaintiff failed to produce any evidence that the Administrator was ever notified that the approval was ever rescinded. Therefore, it appears that the confusion may well have been caused by plaintiff or plaintiff's counsel. Under these CT Page 12220 circumstances, the court exercises its authority to vacate and set aside the default, sua sponte. Practice Book § 17-42.
The defendant has thirty days from the date of notice of this decision to file a response to the complaint.
Elizabeth A. Gallagher, J. CT Page 12221