## STATE OF CONNECTICUT *v.* MICHAEL CERRETA (SC 16261)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

---

252

Argued December 7, 2001—officially released May 21, 2002

*John R. Gulash, Jr.*, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph Corradino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this appeal is whether the trial court improperly excluded evidence related to hair and fingerprints recovered from the crime scene, which forensic tests determined did not originate from the defendant. A jury found the defendant, Michael Cerreta, guilty of felony murder in violation of General Statutes § 53a-54c,[1] manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3),[2] and burglary in the first degree in violation of General Statutes § 53a-101 (a) (2).[3] The defendant appeals from the judgment of the trial court sentencing him to sixty years imprisonment. We conclude that the trial court's exclusion of the evidence was improper and violated the defendant's constitutional right to present a defense as guaranteed by the sixth and fourteenth amendments to the United States constitution.[4] We con-

[1] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit . . . burglary . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

Since 1989, the time of the crime charged against the defendant herein, there have been minor technical changes made to § 53a-54c that are not relevant to this appeal. References herein are to the current revision of the statute.

[2] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[3] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

[4] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . . ."

The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

clude further that the state has failed to establish that this constitutional violation was harmless beyond a reasonable doubt. Accordingly, we reverse the judgment of the trial court.

From the evidence presented at trial, the jury reasonably could have found the following facts. On the morning of May 12, 1989, the body of the victim, seventy-four year old Margaret Woodring, was discovered in her home on Wiklund Avenue in Stratford. The victim's body was discovered by her daughter, Ruth Norell, after Norell had become concerned about the victim's failure to answer the telephone twice earlier in the morning. When her body was found, the victim was lying on her bedroom floor, wearing a nightgown. Her hands and feet had been bound, and a sock had been stuffed into her mouth and secured by a dress belt that had been tied around her head. An autopsy conducted by the office of the chief medical examiner determined that the sock in the victim's mouth had obstructed her airway completely and had caused her death from asphyxia. The victim also had suffered injuries on the left side of her head and face consistent with injuries that could have been inflicted by a human fist. Various personal effects were strewn about the victim's body, her bed, and the floor where she was lying. The victim's house had been ransacked completely and a number of items were discovered missing, including several pieces of jewelry and approximately $700 in cash. The screen on the first floor bathroom window had been sliced open, and the telephone in the living room had been disconnected.

Norell had last seen the victim alive on May 11, 1989. On that day, Norell had taken the victim shopping for groceries in the morning, and the two of them had lunch together at the victim's house afterward. Norell had departed at approximately 12:30 p.m. It was the victim's afternoon routine to do small chores around the house

and watch a television soap opera prior to retiring to her bedroom for a nap. The victim typically would awaken from her nap around 5 p.m., watch the news on television, and eat dinner. The autopsy revealed that the victim had died within three hours of her last meal, which, based on the contents of her stomach, had consisted of carrots, potatoes, onions and green vegetables. Norell and the victim had eaten liverwurst sandwiches and coleslaw for lunch at approximately noon on May 11.

Stephen Biley, the victim's next-door neighbor, was home on the evening of May 11, 1989. Sometime between 6:30 and 7:30 that evening, Biley heard what he described as a "thud." Immediately upon hearing the thud, Biley's dog began barking incessantly toward the direction of the victim's house. Biley's attempts to quiet the dog were unsuccessful and the dog remained on Biley's back deck, facing the victim's house, barking in a vicious manner for another five minutes. That same evening, Janice Caserta, who lived two streets away from the victim, was returning home between 6:45 and 7 p.m. when her car was forced off the road by a vehicle leaving Wiklund Avenue at a high rate of speed. Two black males were in the front seat of the car that forced Caserta off the road.

Soon after the victim's death, detectives from the Stratford police department developed a number of suspects in the killing, including the defendant. The Stratford police, however, never accumulated enough evidence to arrest anyone for the victim's death, and the crime remained unsolved for more than nine years. In the summer of 1998, however, Debbie Pensanti, to whom the defendant had been married twice, and her sister, Joyce Pensanti, with whom the defendant had engaged in an affair during his second marriage with Debbie Pensanti, gave sworn statements to police implicating the defendant in the victim's 1989 death. On

the basis of those statements, the police arrested the defendant and charged him with the victim's murder.

The jury reasonably could have found the following additional facts from Joyce Pensanti's testimony and the sworn statements she gave to police, which were admitted as full exhibits. In May, 1989, Joyce Pensanti drove the defendant, a Caucasian male, and a black male, whom she knew only as "Harry," to Wiklund Avenue in Stratford to commit a burglary. It was mid-afternoon when the three of them arrived on Wiklund Avenue. Joyce Pensanti parked the car on Wiklund Avenue and remained in it while the defendant and Harry exited and walked up the street. The two men were gone for approximately forty-five minutes. When they returned to the car, the defendant was carrying a pillowcase and jewelry, and the two men were arguing.

As the men got back into the car, Joyce Pensanti heard Harry state to the defendant that "things didn't have to go like that in the house." When Joyce Pensanti inquired as to what had happened, the defendant told her that someone had been in the house the two men had burglarized. Upon leaving Wiklund Avenue, Joyce Pensanti, the defendant and Harry drove to the Ragtime Pawnshop in Bridgeport, where the two men went inside and sold the contents of the pillowcase for cash, which the three of them subsequently used to purchase drugs.

Joyce Pensanti's testimony was corroborated by her sister, Debbie Pensanti, who testified that the defendant had confessed to her about the victim's death. Debbie Pensanti testified that she had received a telephone call from the defendant in 1990 while he was incarcerated. The defendant asked Debbie Pensanti to talk to her sister, Joyce Pensanti, because the latter was attempting to implicate him in a killing. The defendant told Debbie Pensanti during the conversation that an

elderly woman had died of a heart attack during a burglary he had committed in Stratford and that Joyce Pensanti had driven the getaway car.

The jury found the defendant guilty of felony murder, manslaughter in the first degree and burglary in the first degree. After the trial court rendered judgment in accordance with the jury's verdict, this appeal followed.

The defendant raises six claims on appeal. He asserts that the trial court improperly: (1) excluded evidence related to hair and fingerprints recovered from the crime scene, which forensic tests determined could not have originated from the defendant;[5] (2) limited the defendant's ability to impeach Joyce Pensanti by precluding the defendant from questioning her with regard to a statement she had made to police in 1990, in which she made unsubstantiated accusations that the defendant had committed a burglary and murder in Easton and in which she implicated the defendant in two burglaries on Wiklund Avenue in Stratford but failed to state anything about the burglary wherein the victim was killed; (3) limited the defendant's ability to impeach

---

[5] The defendant also claims that the trial court improperly excluded evidence related to fingernail scrapings taken from the victim. We are unable to find anything in the record that establishes that the fingernail scrapings, or any tests performed upon the scrapings, produced evidence that would have been relevant. In his offer of proof, defense counsel questioned Arkady Katsnelson, the state's associate medical examiner, regarding the purpose and potential value of fingernail scrapings. Katsnelson stated that scrapings generally are taken to determine whether any biological material, such as blood, is present under the victim's fingernails. If biological material is discovered, Katsnelson explained, tests could be done on that material to determine whether it originated from the victim or from someone else. Nothing in Katsnelson's testimony, however, established that the fingernail scrapings in this case actually produced biological material. Katsnelson's testimony was stated in general terms only. We therefore find no basis for the defendant's claim with respect to the fingernail scrapings and address only the defendant's claim regarding the exclusion of evidence related to the hair and fingerprints recovered from the crime scene. Of course, the defendant is entitled to seek to establish the admissibility of the proffered evidence at the new trial.

Debbie Pensanti by precluding the defendant from questioning her regarding her bias against him and the fact that she had testified against other defendants in at least two other murder trials, which, the defendant contends, demonstrated her proclivity to testify in cases where a reward is offered; (4) instructed the jury with respect to the victim's time of death; and (5) failed to merge the defendant's convictions of felony murder and manslaughter in the first degree.[6] In his sixth and final claim, the defendant argues that the state committed prosecutorial misconduct during its closing argument by arguing facts not in evidence, inappropriately bolstering the credibility of the state's witnesses, and attempting to inflame the passions of the jury. We agree with the defendant's first claim regarding the exclusion of the evidence related to the hair and fingerprints recovered from the crime scene. Because that claim is dispositive of this appeal, and because we cannot predict whether the remaining issues will arise on retrial, we do not reach the merits of those remaining issues.

The following additional factual and procedural background is necessary for the resolution of the defendant's first claim. While investigating the crime scene in this case, the police discovered several hairs on the victim's body and on the ligatures used to bind her hands and feet. One of the hairs recovered by the police had a root attached, and DNA tests performed upon that root excluded the defendant as a possible source of that hair sample. Moreover, microscopic examination deter-

---

[6] The state concedes in its brief, as it did at oral argument, that the defendant's conviction for manslaughter should have been combined with his conviction for felony murder and the manslaughter sentence should be vacated. We agree. See *State* v. *Chicano*, 216 Conn. 699, 703, 584 A.2d 425 (1990) (defendant's rights under double jeopardy clause violated where conviction and sentence for both felony murder and manslaughter based on single homicide), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991); *State* v. *John*, 210 Conn. 652, 693–97, 557 A.2d 93 (same), cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

mined that the other hairs were negroid hairs, none of which originated from the defendant, who is Caucasian. The police also discovered latent fingerprints at the crime scene, including fingerprints on the victim's personal effects strewn about her body, her bed, and the floor where she was lying. Forensic analysis determined that none of those fingerprints was the defendant's.

Prior to trial, the state filed a motion in limine seeking to exclude all evidence related to the hair and fingerprints recovered by the police, including the forensic test results that excluded the defendant as a possible source of that physical evidence. Over the defendant's objection, the trial court granted the state's motion. The trial court, characterizing the evidence as third party culpability evidence, determined that the defendant had failed to establish that the evidence was relevant. The court concluded that the defendant could only introduce evidence to support a theory that someone else had actually committed the crime for which he had been charged if that evidence directly connected a third party to the crime. There was no such connection in this case, the court concluded, and, therefore, the evidence the defendant sought to introduce amounted to little more than an unsubstantiated suspicion that a third party had committed the crime.

On appeal, the defendant claims that the trial court's ruling on the motion in limine was improper. Specifically, the defendant asserts that the evidence that the trial court excluded was relevant to the question of whether someone other than the defendant committed the crime for which the defendant had been charged. The trial court, the defendant contends, abused its discretion and violated his right to present a defense as guaranteed by the sixth and fourteenth amendments to the United States constitution by excluding the evi-

dence.[7] The state responds by claiming that the trial court's ruling was proper because the excluded evidence was not relevant to any issue at trial. First, the state argues that the evidence was, in essence, third party culpability evidence that failed to establish a direct connection between a known third party and the crime, which, the state asserts, is necessary for such evidence to be admissible. Second, the state argues that "[t]he only value of this evidence is that it did not connect [the] defendant to the crime." According to the state, this does not, however, make the evidence relevant because it stops short of conclusively exonerating the defendant. We agree with the defendant.

It is well established that a trial court has broad discretion in ruling on evidentiary matters, including matters related to relevancy. *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997); *State* v. *Colton*, 227 Conn. 231, 248, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). Accordingly, the trial court's ruling is entitled to every reasonable presumption in its favor; *State* v. *Coleman*, supra, 789; and we will disturb the ruling only if the defendant can demonstrate "a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Bruno*, 236 Conn. 514, 549, 673 A.2d 1117 (1996).

The federal constitution "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California* v. *Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). "The sixth amendment right to compulsory pro-

---

[7] The defendant also claims a violation of his state constitutional rights under article first, §§ 8 and 9, of the Connecticut constitution. The defendant, however, has failed to analyze independently his state constitutional claims. We will, therefore, limit our review to the defendant's claims under the United States constitution. See *State* v. *Carter*, 228 Conn. 412, 417 n.6, 636 A.2d 821 (1994); *State* v. *Walton*, 227 Conn. 32, 62 n.24, 630 A.2d 990 (1993).

cess includes the 'right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies.' "[8] *State* v. *Genotti*, 220 Conn. 796, 803–804, 601 A.2d 1013 (1992), quoting *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *DeCaro*, 252 Conn. 229, 256, 745 A.2d 800 (2000); *State* v. *Carter*, 228 Conn. 412, 422, 636 A.2d 821 (1994). The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. *State* v. *Shabazz*, 246 Conn. 746, 752–53 n.4, 719 A.2d 440 (1998); *State* v. *Douglas*, 203 Conn. 445, 455, 525 A.2d 101 (1987). Generally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense. *State* v. *Lewis*, 245 Conn. 779, 800, 717 A.2d 1140 (1998). A defendant, therefore, may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated. *State* v. *Bova*, 240 Conn. 210, 236, 690 A.2d 1370 (1997).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." (Internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 305, 664 A.2d 743 (1995). Evidence is relevant if it "tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence." (Internal quotation marks omitted.) Id. "To be relevant, the evidence need not exclude all other possibilities; it is sufficient if it tends to support the conclusion [for which it is

---

[8] The right to compulsory process is fundamental to due process of law and is applied to state prosecutions through the due process clause of the fourteenth amendment. *Washington* v. *Texas*, 388 U.S. 14, 18–19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967).

offered], even to a slight degree." *State* v. *Rinaldi,* 220 Conn. 345, 353, 599 A.2d 1 (1991).

We can discern no reasonable basis for concluding that the exculpatory evidence the defendant sought to introduce was irrelevant. The defendant attempted to present to the jury evidence that the police had found hair and fingerprints at the crime scene that did not belong to the defendant. The trial court ruled that the evidence was not relevant because it was third party culpability evidence that failed to connect a third party to the crime. The trial court's ruling was premised upon a mischaracterization of the excluded evidence. The hair and fingerprints recovered from the crime scene were not so much evidence of third party culpability as they were evidence exculpatory of the defendant. The restrictions placed on third party culpability evidence are concerned primarily with reliability and, in essence, seek to ensure that a defendant does not introduce tenuous evidence of third party culpability in an attempt to divert from himself the evidence of guilt. See *State* v. *Hernandez,* 224 Conn. 196, 202, 618 A.2d 494 (1992); *State* v. *Echols,* 203 Conn. 385, 392–93, 524 A.2d 1143 (1987). Those same concerns do not exist under the circumstances of this case, where the evidence the defendant sought to introduce was reliable, physical evidence that had undergone the rigors of forensic analysis. The excluded evidence in this case was exculpatory and probative, and it should have been admitted.

We have recognized consistently that a defendant has a right to introduce evidence that indicates that someone other than the defendant committed the crime with which the defendant has been charged. *State* v. *Sauris,* 227 Conn. 389, 401, 631 A.2d 238 (1993); *State* v. *Hernandez,* supra, 224 Conn. 202; *State* v. *Echols,* supra, 203 Conn. 392. "The defendant must, however, present evidence that directly connects a third party to

the crime . . . ." *State* v. *Hernandez*, supra, 202. "It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused." (Citations omitted.) *State* v. *Echols*, supra, 392.

The evidence the defendant sought to introduce in the present case clearly met this standard. Evidence that a third party's hair and fingerprints were found at the crime scene is more than a bare suspicion that someone other than the defendant may have committed the crime. Rather, the excluded evidence established a direct connection between the unidentified source of the hair and fingerprints and the scene of the murder. Such evidence meets the threshold requirement that it directly connect a third party to the crime.

The state took the position at oral argument in this court that the excluded evidence was unreliable, and therefore irrelevant, because it was impossible to determine exactly when the hair and fingerprints were left where the police discovered them. We find no merit in this argument. The hair and fingerprints were recovered not from the periphery of the crime scene but from the victim's body, the ligatures used to bind her hands and feet, and the personal effects on and around her body. This evidence was central to the only contested issue at trial: the identity of the perpetrator. Although it may be the case that this evidence would not have exonerated the defendant unequivocally, such is not the standard for relevance. All that must be shown is that the evidence tends to support the conclusion for which it is offered, even if it does so only to a slight degree. *State* v. *Rinaldi*, supra, 220 Conn. 353. It is unassailable that this evidence supported the defendant's claim that he was not, in fact, the perpetrator of this crime. The excluded evidence, therefore, clearly met the standard for relevance. See *State* v. *Sauris*, supra, 227 Conn.

404–407 (evidence of shoeprints, fingerprint and shirt fibers found around victim's body and in victim's house were probative of whether defendant had been with victim at house during time period when murder occurred). Accordingly, we conclude that the exclusion of the evidence constituted an abuse of the trial court's discretion.

We turn now to the question of whether the trial court's improper exclusion of the physical evidence recovered from the crime scene entitles the defendant to a new trial. The defendant claims that the impropriety is of a constitutional dimension as it deprived him of his right to present a defense under the sixth and fourteenth amendments to the federal constitution. We agree. The excluded evidence not only was relevant to the primary issue at trial, namely, the identity of the perpetrator, it was central to the defendant's claim of innocence. The defendant's claim was, in essence, that Joyce Pensanti and Debbie Pensanti, the state's key witnesses who had provided the only evidence connecting the defendant to the crime, had concocted their statements to the police and their testimony out of animus toward the defendant and a desire to collect the substantial reward being offered in the case.[9] The excluded evidence was, in essence, the most compelling evidence available to the defendant and was crucial to his defense. We conclude that the evidence was of such importance to the defendant's ability to refute the Pensantis' testimony that its exclusion violated the defendant's right under the sixth and fourteenth amendments to defend against the state's accusations. *State* v. *Carter*, supra, 228 Conn. 427–28; see also *Crane* v. *Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986). The defendant's right to present a defense "would be an empty one if

[9] Debbie Pensanti collected a $10,000 reward from the state of Connecticut and a $1000 reward from the town of Stratford for her role in the arrest and conviction of the defendant.

the State were permitted to exclude competent, reliable evidence . . . when such evidence is central to the defendant's claim of innocence." *Crane* v. *Kentucky*, supra, 690.

Finally, we now must determine whether the defendant was in fact harmed by this constitutional deprivation. We cannot hold a constitutional violation harmless unless we are "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman* v. *California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). The burden of establishing harmlessness falls on the state. *State* v. *Carter*, supra, 228 Conn. 428; *State* v. *Colton*, supra, 227 Conn. 253. "If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless." (Internal quotation marks omitted.) *State* v. *Carter*, supra, 428; *State* v. *Colton*, supra, 254.

As we previously have stated, the state's case rested entirely upon the testimony of Joyce Pensanti and Debbie Pensanti. There was no physical evidence presented that connected the defendant to the victim's murder. The jury was unaware, however, that the police had recovered physical evidence from the crime scene that may have connected an unidentified third party to the crime. By establishing that a third party's hair and fingerprints were found at the crime scene, the excluded evidence would have given credence to the defendant's claim of innocence. It cannot seriously be questioned that this evidence may have had a tendency to influence the jury's verdict had it been admitted. This physical evidence may well have created a reasonable doubt in the minds of the jurors as to whether the defendant was in fact the perpetrator of the crimes for which he had been charged. We cannot conclude, therefore, that the constitutional violation in this case was harmless beyond a reasonable doubt. Accordingly, the defendant is entitled to a new trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.