## STATE OF CONNECTICUT *v.* EDDIE ABERNATHY (AC 22198)

Schaller, Flynn and Bishop, Js.

Argued June 11—officially released October 15, 2002

*Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Michael A. Gailor*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. In this case, which is the companion to *State* v. *Dixon*, 72 Conn. App. 852, 806 A.2d 1153 (2002), Eddie Abernathy, one of two codefendants, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, aiding and abetting robbery in the first degree in violation of General Statutes §§ 53a-8 and 53a-134, and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134. On appeal, the defendant claims that the court (1) violated his rights under the sixth amendment to the United States constitution[1] and article first, § 8, of the constitution of Connecticut[2] on three separate occasions when it misinterpreted or misapplied the Connecticut Code of Evidence, and (2) violated his rights under the fourteenth amendment to the United States constitution[3] and article first, § 8,[4] when it declined to admit certain evidence under the residual exception to the hearsay rule. We affirm the judgment of the trial court.

On the basis of the evidence admitted during the defendant's trial, the jury reasonably could have found the following facts. On the evening of October 21, 1998, the defendant, James "G" Dixon, Anthony "Tone" Cannon, Raymond "Flip" Hite, Michael Homes, Tamaika

[1] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . . ."

[2] Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him; [and] to have compulsory process to obtain witnesses in his behalf . . . ."

[3] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[4] Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

Easterling, Lacrisha Williams and others gathered at Tasheeka "Chicken" Contrelle's apartment, at 99 Wyllys Street in Hartford, where they drank liquor and smoked marijuana. Later that evening, Homes led the defendant, Dixon, Cannon and Hite into Contrelle's bedroom, shut the door and proposed that they commit a robbery. After some discussion, the five men exited the bedroom and entered the kitchen, where they drank more liquor and smoked more marijuana.

A while later, at about 10 p.m., the defendant, Dixon and Cannon left the party together. The defendant had in his possession a black, nine millimeter handgun, and Dixon had in his possession a small, chrome .25 caliber handgun. The three men entered a black Honda Prelude, which Cannon had acquired earlier that day, and drove throughout Hartford, stopping to buy gasoline on Washington Street and to buy juice on Brook Street. Thereafter, the three men, while driving on Green Street, saw a man, in the distance, walking in the middle of the road. The defendant, who was driving, drove the Honda to the side of the road, conversed briefly with Dixon and turned off the engine. He then turned toward Cannon, who was in the backseat, handed him a mask and the black, nine millimeter handgun, and told him to rob the man walking in the middle of the road. Cannon accepted the handgun and put on the mask, and he and Dixon exited the Honda together. As they approached the man, Cannon said, "What up?" The man, Baze "Burt" Privette, recognized Cannon's voice and responded, "Tone?"

Cannon hesitated and asked Privette for a cigarette. Privette replied that he did not have one. Cannon then backed away from him, but Dixon, who had been standing to Cannon's right, did not. Rather, he drew the chrome .25 caliber handgun, held it to Privette's head and ordered him to "run everything." He then grabbed Privette and led him into an alley nearby. Halfway down

the alley, Dixon shot Privette in the head, killing him. He searched Privette's pockets and then ran out of the alley. He and Cannon entered the Honda and told the defendant what had occurred. The defendant ordered them to give him the mask and guns and to keep quiet. Dixon and Cannon complied. The three men then drove away, heading toward the vicinity of Capitol Avenue and Lawrence Street.

All three men later were arrested and charged in connection with the incident. The defendant was charged with felony murder, aiding and abetting robbery in the first degree, and conspiracy to commit robbery in the first degree. The jury returned a verdict of guilty as to all counts, and the court rendered judgment accordingly. The defendant later was sentenced to a total effective term of fifty years imprisonment. This appeal followed. Additional facts and procedural history will be presented as necessary.

## I

The defendant first claims that the court violated his rights under the sixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut on three separate occasions when it misinterpreted or misapplied the Connecticut Code of Evidence. Specifically, he claims that the court violated his federal and state constitutional rights to confront witnesses and to present a defense when it precluded him from (1) calling an individual named Antonio Johnson as a witness for the purpose of impeaching Cannon's testimony concerning his motivation for cooperating with the state, (2) calling Johnson as a witness for the purpose of impeaching Cannon's testimony that Cannon never had a disagreement or fight with Privette and (3) asking Homes certain questions

on cross-examination. We begin by setting forth the legal principles that guide our analysis of those claims.[5]

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . .

"Impeachment of a witness for motive, bias and interest may also be accomplished by the introduction of extrinsic evidence. . . . The same rule that applies to the right to cross-examine applies with respect to extrinsic evidence to show motive, bias and interest; proof of the main facts is a matter of right but the extent of the proof of details lies in the court's discretion. . . . The right of confrontation is preserved if defense counsel is permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . .

"Although it is within the trial court's discretion to determine the extent of [impeachment] and the admissibility of evidence, the preclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the [confrontation clause] of the sixth amendment." (Citations omitted; internal quotation marks omitted.) *State* v. *Colton*, 227 Conn. 231,

---

[5] The defendant, in his brief, has failed to analyze independently his state constitutional claims. We therefore limit our review to his claims under the United States constitution. See *State* v. *Cerreta*, 260 Conn. 251, 260 n.7, 796 A.2d 1176 (2002).

248–49, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). Whether limitations on impeachment, including cross-examination, are so severe as to violate the confrontation clause of the sixth amendment is a question of law reviewed de novo. *United States* v. *Gonzalez-Vazquez*, 219 F.3d 37, 45 (1st Cir. 2000) (" '[c]onfrontation clause challenges are reviewed *de novo* to determine whether defense counsel was afforded a reasonable opportunity to impeach adverse witnesses; once that threshold is reached, the trial court's restrictions on the extent and manner of cross-examination are reviewed only for abuse of discretion' "); *United States* v. *Laboy-Delgado*, 84 F.3d 22, 28 (1st Cir. 1996);[6] *United States* v. *Saunders*, 166 F.3d 907, 918–19 & 918 n.16 (7th Cir. 1999) (expressly following *Laboy-Delgado*); *United States* v. *Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *United States* v. *Vargas*, 933 F.2d 701, 704 (9th Cir. 1991).

Nonetheless, "[t]he confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted [impeachment]. . . . Only relevant evidence may be elicited through [impeachment]. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable.

---

[6] "While the right to test witnesses by cross-examination is fundamental, it is not unbridled. . . . When a witness' credibility is in issue, the trial court may impose limits on cross-examination as long as the court grants the defendant sufficient leeway to establish a reasonably complete picture of the witness' veracity, bias, and motivation. . . . If the trial court imposes such limitations and the defendant thereafter challenges them on appeal, we review the record de novo to ascertain whether the court, overall, gave the defendant a reasonable chance to develop the whole picture. . . . If we find that the core concerns of the Sixth Amendment have been satisfied, we will grant relief from the shackling of cross-examination only for manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *United States* v. *Laboy-Delgado*, supra, 84 F.3d 28.

. . . The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Internal quotation marks omitted.) *State v. Pratt*, 235 Conn. 595, 604–605, 669 A.2d 562 (1995).

"The [sixth amendment to the] federal constitution [also] require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment right to compulsory process includes the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated." (Citations omitted; internal quotation marks omitted.) *State v. Cerreta*, 260 Conn. 251, 260–61, 796 A.2d 1176 (2002). Whether the consequences of a court's ruling excluding evidence proffered by a defendant are so severe as to violate the defendant's right to present a defense under the compulsory process clause of the sixth amendment is a question of law reviewed de novo. Cf. *United States v. Soape*, 169 F.3d 257, 267 (5th Cir. 1999) ("We have generally given district courts wide discretion in determining whether subpoenas should issue under Rule 17 (b) [of the Federal Rules of Criminal Procedure] . . . but only within the limits imposed by the Constitution . . . . Whether the trial court's refusal to subpoena a witness violates the Sixth Amend-

ment is, [of] course, a question of law that we review de novo." [Citations omitted; internal quotation marks omitted.]). With those legal principles in mind, we now address each of the defendant's claims.

## A

The defendant first claims that the court violated his right to confront witnesses and his right to present a defense when it precluded him from calling Johnson as a witness for the purpose of impeaching Cannon's testimony concerning his motivation for cooperating with the state. We disagree.

The following additional procedural history is relevant to our analysis of the defendant's claim. During the state's direct examination of him, Cannon, in addition to implicating the defendant and Dixon, testified as follows. In connection with the shooting on October 21, 1998, the state charged him with murder, felony murder and robbery in the first degree, and he was imprisoned as a result of those pending charges. The state had not promised or indicated that it was willing, under any condition, to reduce or to drop any of the charges against him or to recommend that the court impose a lenient sentence.

During cross-examination, Cannon acknowledged that the charges pending against him were very serious, and that he was cooperating with the state and hoping his testimony would benefit him at the time of his sentencing. Additionally, he acknowledged that, if convicted of the pending charges, he could be sentenced to a very long term of imprisonment and that he was "looking to cut [himself] a deal . . . ." He confirmed that the state had not made any promises concerning the charges against him or his sentence.

During the defendant's and Dixon's case-in-chief, they asked the court for permission to call Johnson as

a witness. Johnson, they claimed, was prepared to testify as follows: *"Cannon informed him that he was looking for five years at first, that he was hoping to get three years to get out. He'd be out within a year."* (Emphasis added.) In support of their request, the defendant and Dixon argued that Johnson's statement "goes directly to contradict not necessarily that an offer [has] been made, but the perception . . . [of] what he thinks he's getting for his cooperation with the state." Additionally, the defendant and Dixon alleged that Cannon had made the statement to Johnson very recently, after Cannon had completed testifying during the state's case-in-chief. That, they argued, prevented them from laying a foundation for Johnson's statement during their cross-examination of him. The defendant and Dixon further argued that if the court concluded that a foundation for Johnson's testimony was necessary, it should grant them permission to recall Cannon as their witness to enable them to lay a foundation.

The state opposed the defendant and Dixon's request, arguing that (1) under § 6-10 of the Connecticut Code of Evidence, extrinsic evidence of a prior inconsistent statement is inadmissible if the contents of the statement are not disclosed to the witness at the time the witness testifies and (2) under § 6-4 of the Connecticut Code of Evidence, it is improper to call a witness if the primary purpose in doing so is to impeach the witness.

The court denied the defendant's and Dixon's requests. It concluded that (1) Johnson could not testify regarding Cannon's hopes for only a one, three or five year term of imprisonment because a proper foundation for his testimony had not been established through Cannon, and (2) Cannon could not be recalled because (a) the defendant's and Dixon's offer of proof indicated that the primary purpose in seeking to recall him was to impeach him, and (b) the defendant and Dixon were

seeking to introduce Johnson's statement in the hope that the jury would use it substantively.

On appeal, the defendant claims that the court improperly precluded him from either calling Johnson or recalling Cannon and then calling Johnson. He advances three arguments in support of his claim: (1) the court misapplied § 6-4 of the Connecticut Code of Evidence, (2) the court did not realize it had discretion to permit Johnson to testify even though neither the defendant nor Dixon had established a foundation for his testimony through Cannon during cross-examination and (3) neither § 6-4 or § 6-10 control a situation in which a party is seeking to impeach a witness with a subsequent inconsistent statement.

In response, the state argues, among other things, that the defendant's and Dixon's offer of proof was inadequate because it failed to establish that Johnson's testimony was substantially inconsistent with Cannon's. Because we agree with the state, we need not assess the present claim on the specific grounds urged by the defendant.

The following additional legal principles control our analysis. "Impeachment of a witness by the use of a prior inconsistent statement is proper only if the two statements are in fact inconsistent. . . . Moreover, the inconsistency must be substantial and relate to a material matter. . . . Since the purpose of such evidence is to induce the tribunal to discard the one statement because the witness has also made another statement which cannot at the same time be true . . . the inconsistency must be substantial and relate to a material matter. . . . In determining whether an inconsistency actually exists, the testimony of the witness as a whole, or the whole impression or effect of what has been said, must be examined. . . . Moreover, statements from which a possible inference of inconsistency may

be drawn are insufficient for the purpose of impeachment." (Citations omitted; internal quotation marks omitted.) *State* v. *Richardson*, 214 Conn. 752, 763–64, 574 A.2d 182 (1990). "The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 351, 796 A.2d 1118 (2002).

In the present case, the defendant and Dixon, during their offer of proof, failed to satisfy their burden of establishing that there was a substantial inconsistency between Cannon's testimony and Johnson's proposed testimony concerning a statement that Cannon subsequently had made in his presence. Cannon testified that he was hoping that his testimony would benefit him at the time of his sentencing and that he was "looking to cut [himself] a deal . . . ." His testimony is not substantially inconsistent with the subsequent statement he allegedly made to Johnson, in which he expressed his desire for only a one, three or five year term of imprisonment Consequently, we conclude that the defendant failed to lay a proper foundation for Johnson's testimony. Accordingly, we conclude that the court did not violate the defendant's rights to confront witnesses or to present a defense when it did not permit Johnson to testify concerning Cannon's subsequent statement.

B

We next consider the defendant's claim that the court violated his rights to confront witnesses and to present a defense when it precluded him from calling Johnson as a witness for the purpose of impeaching Cannon's testimony that Cannon never had a disagreement or fight with Privette.

The following additional procedural history is relevant to our analysis of the defendant's claim. The state,

during its case-in-chief, called Cannon as a witness. On direct examination, Cannon testified as follows. Throughout his life, he had known Privette and his family, and he had grown up in the same neighborhood as Privette. He and Privette had friendly relations and encountered each other quite frequently in 1998. Although he and Privette did not socialize together, they conversed whenever they saw each other. He never argued or fought with Privette and was present at the scene when Privette was shot.

During cross-examination, Cannon testified as follows. On October 23, 1998, he told the police, in a written statement, that he had known Privette only for one month. He lied to the police about how long he had known Privette because he was high from smoking illy (marijuana dipped in embalming fluid). He confirmed that he had grown up in the same neighborhood as Privette and volunteered that Jamar Privette, one of Privette's cousins, was a close friend. He steadfastly denied ever having had a disagreement or fight with Privette.

During the defendant's and Dixon's case-in-chief, the defendant asked the court for permission to call Johnson as a witness. Johnson, they claimed, was prepared to testify consistently with a statement he had given to police, indicating that Cannon had told a third person on December 4, 1998, that he had had a disagreement with Privette. Johnson, in that statement, alleged in relevant part: "I had known about this incident where 'Burt' Privette had been killed from talking with his cousin Edn Whitley, who was in the same block as me. Edn told me that the dude that killed Burt had been 'beefing' with Burt and that it was 'Tone' [Cannon]."

The state opposed the request, informing the court that the defendant and Dixon had Johnson's statement in their possession before the trial began and arguing

that in accordance with § 6-10 of the Connecticut Code of Evidence, they should have established a foundation for Johnson's testimony by questioning Cannon about the statement on cross-examination during the state's case-in-chief.

The court denied the defendant's and Dixon's request because they had not established a foundation for Johnson's testimony. In so doing, it stated: "If you have a statement that says Anthony Cannon admitted to having a [disagreement] with the victim to X on such and such a date, in order to impeach a witness, you need to afford him that opportunity and ask him. Otherwise, we're into extrinsic evidence, which the witness was never questioned about and that's not permissible under the rules."

On appeal, the defendant advances two arguments in support of his claim: (1) the court did not know it had discretion to permit Johnson to testify absent a foundation and, therefore, improperly precluded him from testifying for lack of a foundation, and (2) improperly precluded him from laying a foundation by recalling Cannon to question him about Johnson's statement.

In response, the state argues, among other things, that the defendant's and Dixon's offer of proof was inadequate because it failed to establish that Johnson's statement, which included hearsay, was admissible. We agree with the state.

The following additional legal principles are relevant to our consideration of the state's counterargument. "The purpose of an offer of proof has been well established by our courts. First, it informs the court of the legal theory under which the evidence is admissible. Second, it should inform the trial judge of the specific nature of the evidence so that the court can judge its admissibility. Third, it creates a record for appellate review." (Internal quotation marks omitted.) *State* v.

*Walsh*, 67 Conn. App. 776, 786–87, 789 A.2d 1031, cert. denied, 260 Conn. 906, 795 A.2d 546 (2002).

Section 6-5 of the Connecticut Code of Evidence provides: "The credibility of a witness may be impeached by evidence showing bias for, prejudice against, or interest in any person or matter that might cause the witness to testify falsely." "The range of matters potentially giving rise to bias, prejudice or interest is virtually endless." Conn. Code Evid. § 6-5 commentary. "Because evidence tending to show a witness' bias, prejudice or interest is never collateral . . . impeachment of a witness on these matters may be accomplished through the introduction of extrinsic evidence, in addition to examining the witness directly. . . . The scope and extent of proof through the use of extrinsic evidence is subject to the court's discretion, however . . . and whether extrinsic evidence may be admitted to show bias, prejudice or interest without a foundation is also within the court's discretion. . . .

"The offering party must establish the relevancy of impeachment evidence by laying a proper foundation . . . which may be established in one of three ways: (1) by making an offer of proof; (2) the record independently may establish the relevance of the proffered evidence; or (3) stating a good faith belief that there is an adequate factual basis for [the] inquiry." (Citations omitted; internal quotation marks omitted.) Id.

In the present case, the record discloses that the defendant and Dixon each were seeking to introduce evidence that a third party had committed the respective crimes with which each of them had been charged.[7]

---

[7] For clarity, we note that "[b]oth this state and other jurisdictions have recognized that a defendant may introduce evidence which indicates that a third party, and not the defendant, committed the crime with which the defendant is charged." (Internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 564, 747 A.2d 487 (2000).

The record further discloses that the defendant and Dixon each were seeking to establish that Cannon, specifically, had a motive and an opportunity to shoot Privette. Thus, Johnson's written statement indicating that Whitley told him that Cannon had killed Privette following a disagreement is relevant. See id., § 4-1.[8]

Evidence that is relevant is not necessarily admissible, however. See id., § 4-2 ("[a]ll relevant evidence is admissible, except as otherwise provided by the constitution of the United States, the constitution of this state, the Code or the General Statutes"). Section 8-2 of the Connecticut Code of Evidence provides: "Hearsay is inadmissible, except as provided in the Code, the General Statutes or the Practice Book." "'Hearsay' means a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted." Id., § 8-1 (3).

The defendant and Dixon, in their offer of proof, failed to establish that Johnson's statement, in which he relays what Whitley had told him, was admissible despite the fact that it is hearsay. Consequently, we conclude that the court did not violate the Connecticut Code of Evidence when it precluded the defendant from calling Johnson as a witness for the purpose of impeaching Cannon's testimony that Cannon never had a disagreement or fight with Privette. On that basis, we conclude that the court did not violate the defendant's right to confront witnesses. See State v. Pratt, supra, 235 Conn. 604–605 (confrontation clause does not suspend rules of evidence to give defendant right to engage in unrestricted impeachment). Finally, on the basis of the entire record, we conclude that the court afforded the defendant a meaningful opportunity to present a

---

[8] Section 4-1 of the Connecticut Code of Evidence provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence."

defense (including a third party culprit defense) and, therefore, did not violate his right to present a defense. See also *State* v. *Cerreta*, supra, 260 Conn. 261 (" '[g]enerally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense' ").

## C

The defendant next claims that the court violated his rights to confront witnesses and to present a defense when it precluded him from asking Homes certain questions on cross-examination.

The following additional procedural history is relevant to our consideration of the defendant's claim. The state, during its case-in-chief, called Homes as a witness. On direct examination, he testified as follows. During, October, 1998, he lived with Contrelle in her apartment. He was present at Contrelle's party on the evening of the shooting, as were the defendant, Dixon and Cannon. At the party, he and the other adults were smoking marijuana and drinking alcohol, and he was high. The defendant had a big black handgun, and Dixon had a small, silver colored .25 caliber handgun. In Contrelle's bedroom, the defendant, Dixon, Cannon and Contrelle discussed committing a robbery to "get a few dollars." Later, at approximately 11 p.m., the defendant, Dixon and Cannon left the party together. Very early the following morning, at 1 or 2 a.m., the defendant and Cannon returned. The defendant did not speak, and Cannon, who usually was boisterous, sat on the couch, shaking.

Sometime during the week preceding the shooting, the defendant told Homes that Privette owed the defendant money and that Privette had refused to acknowledge the debt. Homes knew Privette and his family for a long time; he grew up with him and lived across the street from him. On cross-examination, Homes testified as follows. The defendant was wearing a black overcoat

on the night of the shooting; he could not recall, however, what Cannon was wearing that night. Contrelle was his girlfriend in 1998, and he saw a sawed-off shotgun on a shelf in Contrelle's bedroom during the party.

During cross-examination, Homes was asked the following three questions: (1) "You're smoking marijuana, you're drinking, there are weapons around, there's a five year old kid walking in an out of the apartment. Couldn't Chicken [Contrelle] have been arrested for risk of injury?"; (2) "And there came a point that Tasheeka [Contrelle] was arrested for [possession of ] that shotgun, correct?"; and (3) "When was the last time you saw Burt prior to this—the shooting of Burt?" The state objected to those three questions, arguing that each was irrelevant. The court sustained all three of the state's objections. On appeal, the defendant argues that the court improperly sustained the objections and, as a result, violated his rights to confront the witness and to present a defense. We disagree.

The following additional legal principles are relevant to our analysis. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State v. Nunes*, 260 Conn. 649, 685–86, 800 A.2d 1160 (2002).

We conclude that if Homes had been allowed to respond to one or more of the three questions at issue, evidence irrelevant to the determination of the issues relating to the charges against the defendant and Dixon

would have been admitted. Evidence establishing that Contrelle could have been arrested for risk of injury to a child and actually was arrested for possessing a sawed-off shotgun did not have a logical tendency to aid the jury in deciding whether the state had proven its charges against the defendant and Dixon. Similarly, the record discloses that evidence establishing when Homes last saw Privette did not have a logical tendency to aid the jury. Accordingly, we conclude that the court did not violate the defendant's rights to confront witnesses or to present a defense when it declined to permit the defendant to ask Homes irrelevant questions on cross-examination.

## II

Finally, the defendant claims that the court acted improperly in declining to admit certain evidence under the residual exception to the hearsay rule.

The following additional procedural history is relevant to our consideration of the defendant's claim. During his case-in-chief, the defendant called Sahmish Banks as a witness. On direct examination, the defendant elicited testimony concerning a conversation she had had with Privette on October 21, 1998. Banks testified that during that conversation, Private had said that he had had an "argument with some kid." The state immediately objected, arguing that Banks' testimony was hearsay. The court reserved ruling on the objection and permitted the defendant to lay more of a foundation through Banks. The direct examination of her proceeded as follows:

"Q. Now, the discussion we just talked about, what time, approximately, did that happen that day?

"A. Probably like around 2:30.

"Q. And this happened—where did this discussion happen?

"A. With him and—

"Q. Yes.

"A. —Whoever?

"Q. Yes.

"A. Mahl Avenue. Wherever that's at. I don't know.

"Q. No. Where did your discussion with—

"A. Him?

"Q. Yes.

"A. Green Street.

"Q. At your place?

"A. At our house.

"Q. Okay. And how soon after the incident did you talk to him?

"A. Half an hour.

"Q. Was he—what was his demeanor? Do you know what that means?

"A. Uh-uh.

"Q. What did he look like when he was describing this incident to you?

"A. Like himself, like he didn't—it didn't really matter to him but he told me anyway.

"Q. Was he excited?

"A. No.

"Q. Was he nervous?

"A. No. He was just himself when he said it."

The defendant then offered Banks' testimony under, inter alia, the residual exception to the hearsay rule. The court sustained the state's objection on the basis

that the defendant had not made "a sufficient showing as to the reliability or trustworthiness of the statement."

On appeal, the defendant argues that the court, in declining to admit Banks' testimony under the residual exception, violated the Connecticut Code of Evidence as well as his state and federal constitutional rights to due process. We disagree.

Simply put, the defendant has put a constitutional tag on a nonconstitutional evidentiary ruling. "[I]t would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *Dash*, 242 Conn. 143, 152, 698 A.2d 297 (1997). We thus consider the defendant's claim as we would any ordinary challenge to an evidentiary ruling. Our determination, therefore, is whether the court abused its discretion in its evidentiary ruling.

"A trial court's ruling on the admissibility of evidence is entitled to great deference and will be overturned only if a clear abuse of the court's discretion is shown and the defendant shows that the ruling caused substantial prejudice or injustice." *State* v. *Lewis*, 245 Conn. 779, 804 n.23, 717 A.2d 1140 (1998). An appellate tribunal is required to make every reasonable presumption in favor of upholding the trial court's ruling. Id., citing *State* v. *Hines*, 243 Conn. 796, 801, 709 A.2d 522 (1998).

Section 8-9 of the Connecticut Code of Evidence contains the residual exception to the hearsay rule and provides: "A statement that is not admissible under any of the foregoing exceptions is admissible if the court determines that (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by equivalent guarantees of trustworthiness

and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule."

"Reasonable necessity is established by showing that unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead or otherwise unavailable, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources." (Internal quotation marks omitted.) Id., § 8-9 commentary.

The record discloses that the defendant, in his offer of proof, did not establish that there was a reasonable necessity for the admission of Banks' testimony concerning Privette's statement. The defendant did not so much as argue that evidence of the same value could not be obtained from other sources. Additionally, we cannot conclude, on the basis of the record, that the circumstances surrounding Privette's statement established a motivational basis for truth telling equivalent to those associated with the traditional exceptions to the hearsay rule. Accordingly, we conclude that the court did not abuse its discretion in declining to admit Banks' testimony under the residual exception to the hearsay rule.

The judgment is affirmed.

In this opinion the other judges concurred.