STATE OF CONNECTICUT *v.* JAMES DIXON
(AC 22041)

Schaller, Flynn and Bishop, Js.

Argued June 11—officially released October 15, 2002

*Donald J. O'Brien*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Michael A. Gailor*, assistant state's attorney, for the appellee (state).

BISHOP, J. In this case, which is the companion to *State* v. *Abernathy*, 72 Conn. App. 831, 806 A.2d 1139 (2002), James Dixon, one of two codefendants, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134, and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that (1) the court violated his rights under the sixth amendment to the United States constitution[1] and article first, § 8, of the constitution of Connecticut[2] on three separate occasions when it misinterpreted or misapplied the Connecticut Code of Evidence, (2) the court violated his rights under the fourteenth amendment to the United States constitution[3] and article first, § 8,[4] when it declined to admit certain evidence under the residual exception to the hearsay rule, (3) the state failed to disclose exculpatory material to him in a timely manner and (4) the court violated his right, under the sixth amendment, to a jury

---

[1] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . . ."

[2] Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him; [and] to have compulsory process to obtain witnesses in his behalf . . . ."

[3] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[4] Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

drawn from a fair cross section of the community.[5] We affirm the judgment of the trial court.

On the basis of the evidence admitted during the defendant's trial, the jury reasonably could have found the following facts. On the evening of October 21, 1998, the defendant, Eddie Abernathy, Anthony "Tone" Cannon, Raymond "Flip" Hite, Michael Homes, Tamaika Easterling, Lacrisha Williams and others gathered at Tasheeka "Chicken" Contrelle's apartment, at 99 Wyllys Street in Hartford, where they drank liquor and smoked marijuana. Later that evening, Homes led the defendant, Abernathy, Cannon and Hite into Contrelle's bedroom, shut the door and proposed that they commit a robbery. After some discussion, the five men exited the bedroom and entered the kitchen, where they drank more liquor and smoked more marijuana.

A while later, at about 10 p.m., the defendant, Abernathy and Cannon left the party together. The defendant had in his possession a small, chrome .25 caliber handgun, and Abernathy had in his possession a black, nine millimeter handgun. The three men entered a black Honda Prelude, which Cannon had acquired earlier that day, and drove throughout Hartford, stopping to buy gasoline on Washington Street and to buy juice on Brook Street. Thereafter, the three men, while driving on Green Street, saw a man, in the distance, walking in the middle of the road. Abernathy, who was driving, drove the Honda to the side of the road, conversed briefly with the defendant and turned off the engine. He then turned toward Cannon, who was in the backseat, handed him a mask and the black, nine millimeter handgun and told him to rob the man walking in the middle of the road. Cannon accepted the handgun and put on

[5] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."

the mask, and he and the defendant exited the Honda together. As they approached the man, Cannon said, "What up?" The man, Baze "Burt" Privette, recognized Cannon's voice and responded, "Tone?"

Cannon hesitated and asked Privette for a cigarette. Privette replied that he did not have one. Cannon then backed away from him, but the defendant, who had been standing to Cannon's right, did not. Rather, he drew the chrome .25 caliber handgun, held it to Privette's head and ordered him to "run everything." He then grabbed Privette and led him into an alley nearby. Halfway down the alley, the defendant shot Privette in the head, killing him. He searched Privette's pockets and then ran out of the alley. He and Cannon entered the Honda and told Abernathy what had occurred. Abernathy ordered them to give him the mask and guns and to keep quiet. The defendant and Cannon complied. The three men then drove away, heading toward the vicinity of Capitol Avenue and Lawrence Street.

All three men later were arrested and charged in connection with the incident. The defendant was charged with murder in violation of General Statutes § 53a-54a (a), felony murder, robbery in the first degree, conspiracy to commit robbery in the first degree and carrying a pistol or revolver without a permit. The jury returned a verdict of not guilty as to the murder count, and a verdict of guilty of felony murder, conspiracy to commit robbery in the first degree, carrying a pistol or revolver without a permit and the lesser offense of attempt to commit robbery in the first degree. The court rendered judgment accordingly and later sentenced the defendant to a total effective term of fifty years imprisonment. This appeal followed. Additional facts and procedural history will be presented as necessary.

I

The defendant first claims that the court violated his rights under the sixth amendment and article first, § 8,

on three separate occasions when it misinterpreted or misapplied the Connecticut Code of Evidence.[6] Specifically, he claims that the court violated his federal and state constitutional rights to confront witnesses and to present a defense when it precluded him from (1) calling an individual named Antonio Johnson as a witness for the purpose of impeaching Cannon's testimony concerning his motivation for cooperating with the state, (2) calling Johnson as a witness for the purpose of impeaching Cannon's testimony that Cannon never had a disagreement or fight with Privette and (3) asking Homes the following question on cross-examination: "And there came a point that Tasheeka [Contrelle] was arrested for [possession of a] shotgun [in her home on the night of the crimes], correct?"

In *State* v. *Abernathy*, supra, 72 Conn. App. 835–49, Abernathy raised the same challenges to those evidentiary rulings, which we addressed and rejected in part I of that opinion. We reject the defendant's claims on the basis of that analysis.

## II

The defendant next claims that the court, in declining to admit certain testimony under the residual exception to the hearsay rule, violated the Connecticut Code of Evidence as well as his state and federal constitutional rights to due process.[7] Specifically, the defendant argues that the court improperly excluded the testimony of Sahmish Banks, a friend of Privette, that on October 21, 1998, Privette had told her that he had had an "argument with some kid."

In *State* v. *Abernathy*, supra, 72 Conn. App. 849–52, Abernathy raised the same challenges to that eviden-

---

[6] The defendant, in his brief, has failed to analyze independently his state constitutional claims. We therefore limit our review to his claims under the United States constitution. See *State* v. *Cerreta*, 260 Conn. 251, 260 n.7, 796 A.2d 1176 (2002).

[7] See footnotes 3 and 4.

tiary ruling, which we addressed and rejected in part II of that opinion. We reject the defendant's claims on the basis of that analysis.

III

The defendant argues that the state and Cannon, a witness who presented testimony unfavorable to the defendant during the state's case-in-chief, previously had agreed that Cannon would testify against the defendant in exchange for a favorable sentencing recommendation on his own pending charges relating to the shooting. Because the existence of that agreement never was disclosed, the defendant claims that the state failed to disclose exculpatory material to him in a timely manner in violation of *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We reject the defendant's claim.

"The law governing the state's obligation to disclose exculpatory evidence to defendants in criminal cases is well established. The defendant has a right to the disclosure of exculpatory evidence under the due process clauses of both the United States constitution and the Connecticut constitution. [Id., 86]; *State* v. *Simms*, 201 Conn. 395, 405 & n.8, 518 A.2d 35 (1986). In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) that the evidence was favorable to the defense; and (3) that the evidence was material." (Internal quotation marks omitted.) *State* v. *Sitkiewicz*, 64 Conn. App. 108, 113, 779 A.2d 782, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001).

"It is well established that [i]mpeachment evidence as well as exculpatory evidence falls within *Brady*'s definition of evidence favorable to an accused. . . . A plea agreement between the state and a key witness is impeachment evidence falling within the definition of exculpatory evidence contained in *Brady*." (Citations

omitted; internal quotation marks omitted.) *State* v. *Floyd*, 253 Conn. 700, 737, 756 A.2d 799 (2000). "The existence of an undisclosed plea agreement is an issue of fact for the determination of the trial court. . . . Furthermore, the burden is on the defendant to prove the existence of undisclosed exculpatory evidence." (Citation omitted.) Id. A court's factual finding as to whether undisclosed exculpatory evidence exists will not be disturbed on appeal unless it is clearly erroneous. Id., 737–38. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted) Id., 738.

In the present case, the defendant, during his case-in-chief, asked the court for permission to recall Cannon, the state's key witness, for the purpose of questioning him about a conversation he allegedly had had with Johnson. During that conversation, the defendant argued, Cannon had told Johnson that "he was looking for five years at first, that he was hoping to get three years to get out. He'd be out within a year." At no time did the defendant argue that the state had, in fact, made an offer to Cannon.

Following the defendant's trial, Cannon pleaded guilty to reduced charges and was sentenced to a total effective term of eighteen years imprisonment, suspended after nine years, with five years probation. During Cannon's sentencing hearing, the state informed the court as follows: "Mr. Cannon did testify at the trial of the codefendant, so his two codefendants were both convicted of crimes of felony murder. It's because of his cooperation in that case that the charges are what they are today, and the court has indicated a sentence

of eighteen [years, suspended] after nine [years incarceration]."

On the basis of the record before us, we conclude that the defendant failed in his burden of proving the existence of the undisclosed exculpatory evidence he complains of on appeal.

## IV

Finally, the defendant claims that the court violated his sixth amendment right to a jury drawn from a fair cross section of the community when it excused each venireperson who worked full-time and whose employer would compensate that venireperson only for the first five days of jury service. The defendant argues that the court's practice, as well as General Statutes § 51-247, results in the systemic exclusion of minorities from jury service.[8] Before setting forth the relevant legal principles, we note that the defendant concedes that during his trial, he did not offer any evidence in support his present claim.

"In order to establish a violation of his federal constitutional right to a jury drawn from a fair cross section of the community, the defendant must demonstrate the following: (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." (Internal quotation marks omitted.) *State* v. *Gibbs*, 254 Conn. 578, 588, 758 A.2d 327 (2000).

Turning immediately to the second prong of the test, we conclude that the defendant has failed to provide any

---

[8] General Statutes § 51-247 (a) provides in relevant part: "Each full-time employed juror shall be paid regular wages by his employer for the first five days, or part thereof, of his juror service. . . ."

evidence, including statistical evidence, demonstrating that the court's practice or § 51-247, or both, systematically excludes minorities from serving on juries. We therefore reject his claim.

The judgment is affirmed.

In this opinion the other judges concurred.