******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* JERMAINE
LEE COWAN
(AC 42450)

Alvord, Clark and Norcott, Js.

*Syllabus*

Convicted of the crimes of robbery in the second degree, larceny in the third degree, and conspiracy to commit larceny in the third degree in connection with his involvement in a bank robbery, the defendant appealed to this court. One of the defendant's coconspirators, C, pleaded guilty to conspiracy to commit robbery in the first degree in connection with the incident. C testified for the state at the defendant's trial. She testified that the state had not offered to reduce her sentence in exchange for her testimony nor had she been promised any other benefit. Approximately two months after the defendant's conviction, C's sentence was modified and, approximately nine months later, her sentence was further modified to replace her probation period with a conditional discharge. The defendant appealed and, subsequently, filed a motion for augmentation and rectification, requesting that the trial court review the clerk's files for the cases against C and any relevant transcripts to determine whether her sentence modifications were influenced by her testimony against the defendant and that, if evidence of such influence existed, the court hold a hearing pursuant to *State* v. *Floyd* (253 Conn. 700) to determine whether a nonfrivolous, factual basis for a claim of unlawful withholding of impeachment material under *Brady* v. *Maryland* (373 U.S. 83) existed. The trial court denied the motion and, following this court's order in response to the defendant's motion for review, issued an articulation of its decision. The defendant did not file an additional motion for review requesting that this court order a *Floyd* hearing or seek any other relief in connection with the trial court's ruling on his motion. *Held* that the defendant could not prevail on his claim that his due process rights were violated because his conviction was obtained on the basis of false testimony, which the state failed to correct: because the defendant did not seek further review of the trial court's articulation or make any mention of a *Floyd* hearing in his brief to this court, this court did not review the trial court's decision denying the defendant's request to hold a *Floyd* hearing and reviewed only whether C's testimony was false and whether the state improperly withheld impeachment evidence regarding her credibility; moreover, the defendant did not challenge the trial court's findings that there was no evidence that the state had promised to help C obtain a sentence reduction in exchange for her testimony at the defendant's trial, that C received a sentence modification based on her testimony, or that the state unlawfully withheld impeachment material from the defendant, nor did the evidence in the record indicate that the state sought or advocated for C's sentence to be modified after she testified; accordingly, there was no basis for the defendant's claim.

Argued September 21—officially released November 9, 2021

*Procedural History*

Substitute information charging the defendant with the crimes of robbery in the first degree, conspiracy to commit robbery in the first degree, larceny in the third degree, and conspiracy to commit larceny in the third degree, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, and tried to the jury before *B. Fischer, J.*; verdict and judgment of guilty of robbery in the second degree, larceny in the third degree, and conspiracy to commit larceny in the third degree, from which the defendant appealed to this court. *Affirmed.*

*Jermaine Lee Cowan*, self-represented, the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Patrick Griffin*, state's attorney, and *Seth Garbarsky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The self-represented defendant, Jermaine Lee Cowan,[1] appeals from the judgment of conviction, rendered after a jury trial, of robbery in the second degree, larceny in the third degree, and conspiracy to commit larceny in the third degree. On appeal, the defendant claims that his due process rights were violated because his conviction was obtained on the basis of false testimony, which the state failed to correct. We conclude that this claim lacks merit and, accordingly, affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. On March 12, 2014, Zakea Crawford-Brooks (Crawford) drove the defendant and Jermaine Brooks[2] to a bank in Woodbridge. The defendant and Jermaine Brooks exited the vehicle and proceeded to rob the bank, and, after they exited the bank with more than $7700, Crawford served as the getaway driver.[3] Crawford and Jermaine Brooks were arrested and later pleaded guilty in connection with their roles in the robbery. The defendant also was arrested and elected a jury trial.

A jury trial for the defendant commenced on February 8, 2016. On February 10, 2016, the state called Crawford as a witness to testify against the defendant. Crawford testified regarding the defendant's role in the robbery and stated that she had been convicted of conspiracy to commit robbery in connection with the March 12, 2014 incident and was serving time in prison for that conviction. Crawford further testified that she had not been promised any benefit in exchange for her testimony and that the state had not offered to reduce her sentence for testifying against the defendant. On February 16, 2016, following the trial, the defendant was found guilty of robbery in the second degree in violation of General Statutes § 53a-135 (a) (2), larceny in the third degree in violation of General Statutes § 53a-124, and conspiracy to commit larceny in the third degree in violation of General Statutes §§ 53a-48 and 53a-124. This appeal followed.

During the pendency of this appeal, on June 25, 2019, the defendant, "[p]ursuant to Practice Book §§ 60-2 (1) and (8), 60-5, 61-10, 66-5, and *State* v. *Floyd*, 253 Conn. 700, 756 A.2d 799 (2000)," filed a motion for augmentation and rectification of the record. In that motion, he stated that he had learned, through an off-the-record discussion with his trial counsel, that Crawford had received a sentence reduction in exchange for her testimony against him at his trial. He requested that the trial court review the clerk's files in the cases against Crawford and any relevant transcripts to determine if Crawford's sentence reductions were influenced by her testimony against him. The defendant further requested

that, if the court determined that there existed prima facie evidence of such influence, it hold a hearing pursuant to *Floyd* "in order to make such findings as may be necessary for [his] counsel to determine whether there exists a nonfrivolous factual basis for an appellate claim of an unlawful withholding of impeachment material under *Brady* v. *Maryland*, 373 U.S. 83, [87,] 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) . . . ." On August 9, 2019, the defendant supplemented the motion by filing a notice with additional information about Crawford's original sentencing and sentence modifications. On August 13, 2019, the trial court summarily denied the motion.

On August 23, 2019, the defendant, "[p]ursuant to Practice Book . . . §§ 60-2, 66-5, 66-6 and 66-7," filed a motion for review with this court requesting that it "direct the trial court to hold an evidentiary hearing to determine whether the state engaged in a *Brady* . . . violation" or, alternatively, "to direct the trial court to articulate its findings of fact and conclusions of law underlying its denial of the defendant's motion for rectification so that the defendant [could] respond in an amended motion for review." On October 16, 2019, this court granted his alternative request and ordered the trial court to articulate the factual and legal basis for its denial of the defendant's motion.

On January 24, 2020, the trial court issued an articulation, which included the following information regarding Crawford's criminal record. On January 26, 2014, Crawford was arrested for the sale of narcotics. On August 17, 2015, she pleaded guilty to that charge. On the same date, pursuant to the *Alford*[4] doctrine, she pleaded guilty to conspiracy to commit robbery in the first degree in connection with her role in the bank robbery. On October 26, 2015, she was sentenced for both crimes, and the sentences were to run concurrently. On April 5, 2016, roughly two months after the jury found the defendant guilty, Crawford's sentence with respect to her conviction of conspiracy to commit robbery was modified. On April 6, 2016, her sentence with respect to her conviction for the sale of narcotics was modified. The state did not oppose either sentence modification. On December 27, 2016, Crawford's conspiracy sentence was modified again, on the record. The state did not object to that modification.[5]

In its articulation, the trial court stated that it had reviewed the clerk's files and transcripts for the robbery and narcotics cases in which Crawford was the named defendant. The court further stated that it had reviewed the application and sentence modification form filed by Crawford, along with a handwritten letter attached to her modification request in which she articulated why she was seeking a sentence modification. To support her request, Crawford stated in the handwritten letter, among other things, that she had "[cooperated]

with the state on the trial of [the defendant]." The court concluded: "This court's review of the previously mentioned clerk's files and transcripts does not show a promise by the state to . . . Crawford . . . to help her obtain a sentence reduction in exchange for her trial testimony. There is nothing in the review of the record that indicates . . . Crawford . . . received a modification of her sentence based on her testimony at the defendant's trial. A complete review of the record finds no evidence of an unlawful withholding of impeachment material. The defendant has not met his burden for the court to hold a . . . hearing pursuant to *State* v. *Floyd*, [supra, 253 Conn. 700]." (Internal quotation marks omitted.) The defendant did not file with this court a subsequent motion for review requesting that this court order a *Floyd* hearing nor did he seek any other relief in connection with the court's ruling on his motion to augment and rectify the record.

The defendant claims that his due process rights were violated because his conviction was obtained on the basis of false testimony, which the state failed to correct. Specifically, he alleges that Crawford falsely testified that she was not promised a benefit for testifying against him. We conclude that this claim lacks merit.

We begin by setting forth the standard of review and relevant principles of law. Under *Brady* v. *Maryland*, supra, 373 U.S. 87, the state is required to disclose to a defendant any materially exculpatory evidence in its possession. During or after a defendant's trial, "[t]he state has a duty to correct the record if it knows that a witness has testified falsely. . . . [D]ue process is . . . offended if the state, although not soliciting false evidence, allows it to go uncorrected when it appears. . . . If a government witness falsely denies having struck a bargain with the state, or substantially mischaracterizes the nature of the inducement, the state is obliged to correct the misconception. . . . [A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Turner* v. *Commissioner of Correction*, 181 Conn. App. 743, 754–55, 187 A.3d 1163 (2018).

"As set forth by the United States Supreme Court in *Brady* v. *Maryland*, supra, 373 U.S. 87, [t]o establish a *Brady* violation, the [defendant] must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the [defendant], and (3) it was material [either to guilt or to punishment]." (Internal quotation marks omitted.) *State* v. *Bryan*, 193 Conn. App. 285, 315, 219 A.3d 477, cert. denied, 334 Conn. 906, 220 A.3d 37 (2019).

"Pursuant to *State* v. *Floyd*, supra, 253 Conn. 700, a trial court may conduct a posttrial evidentiary hearing

to explore claims of potential *Brady* violations . . . when a defendant was precluded from perfecting the record due to new information obtained after judgment. . . . In order to warrant such a hearing, a defendant must produce prima facie evidence, direct or circumstantial, of a *Brady* violation unascertainable at trial. . . . The trial court's decision with respect to whether to hold a *Floyd* hearing is reviewable by motion for review pursuant to Practice Book § 66-7 . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Ouellette*, 295 Conn. 173, 182 n.7, 989 A.2d 1048 (2010).

"The existence of an undisclosed agreement is an issue of fact to be determined by the trial court, and the defendant has the burden of proving the existence of undisclosed exculpatory evidence." *State* v. *Henderson*, 83 Conn. App. 739, 744, 853 A.2d 115, cert. denied, 271 Conn. 913, 859 A.2d 572 (2004). "A court's factual finding as to whether undisclosed exculpatory evidence exists will not be disturbed on appeal unless it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *State* v. *Dixon*, 72 Conn. App. 852, 859, 806 A.2d 1153, cert. denied, 262 Conn. 926, 814 A.2d 380 (2002).

In the present case, because the defendant did not seek further review of the trial court's articulation or make any mention of a *Floyd* hearing in his brief to this court, we are not tasked with reviewing the trial court's decision denying the defendant's request to hold a *Floyd* hearing. See *State* v. *Ouellette*, supra, 295 Conn. 183–84. Rather, the question before this court is whether the defendant established, on the basis of the record before the trial court, that Crawford's testimony was false and that the state improperly withheld impeachment evidence regarding her credibility. See id., 185. "[T]his is a fact based claim to be determined by the trial court, subject only to review for clear error." Id., 187.

The trial court stated in its articulation that Crawford testified that no one in the prosecutor's office or law enforcement promised her that she would receive a benefit in exchange for her testimony against the defendant. The court further stated that it found no evidence that the state had promised to help Crawford obtain a sentence reduction in exchange for her testimony at the defendant's trial, that Crawford received a sentence modification based on her testimony at the defendant's trial, or that the state unlawfully withheld impeachment material from the defendant. Notably, the defendant does not challenge those factual findings on appeal.

The defendant has not produced any evidence that the state made a promise to Crawford in exchange for

her testimony against him at his criminal trial. Instead, he merely speculates that such a promise was made. Furthermore, the evidence in the record does not indicate that the state sought or advocated for Crawford's sentence to be modified after she testified at the defendant's trial. Rather, the record indicates only that the state did not oppose Crawford's requests. In light of the court's finding, which is fully supported by the record, that the state did not make a promise to Crawford in exchange for her testimony, there is no basis for the defendant's claim that the state improperly relied on the allegedly false testimony of Crawford that she was not promised a benefit in exchange for her testimony. Accordingly, the defendant cannot prevail on his claim.

The judgment is affirmed.

[1] The defendant was represented by counsel at trial. On March 28, 2019, after this appeal was filed, the defendant's appellate counsel filed with this court a motion for leave to withdraw as appellate counsel "[p]ursuant to Practice Book §§ 43-34, 43-35 and 62-9 (d), *Anders* v. *California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and *State* v. *Pascucci*, 161 Conn. 382, 288 A.2d 408 (1971) . . . ." Pursuant to Practice Book § 62-9 (d) (3), counsel's motion, his memorandum of law in support thereof, and transcripts from the proceedings were referred to the trial court for decision. The trial court held teleconferences with the defendant and his appellate counsel on September 24 and October 22, 2020. On November 19, 2020, the trial court granted the appellate counsel's motion, and the defendant has since proceeded as a self-represented litigant.

[2] Crawford is married to Jermaine Brooks. For clarity, we refer to her as Crawford and to Jermaine Brooks by his full name throughout this opinion.

[3] Jermaine Brooks' sister, Mary Brooks, was also in the car at the time of the robbery. She also was arrested in connection with the robbery, but her participation in the crime is not relevant to the present appeal.

[4] *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[5] When Crawford's robbery sentence was first modified on April 5, 2016, her modified sentence included three years of probation. On December 27, 2016, the court held a hearing on the record and, again, modified the sentence by replacing the period of probation with three years of conditional discharge. At the hearing, Senior Assistant State's Attorney Seth Garbarsky, who represented the state, stated: "My understanding is [Crawford] has found employment out of state and [the] probation [office], for whatever reason, was either not willing or not able to transfer the probation down south to where she resides. So I have no objection to converting that to a conditional discharge."